STATE OF NORTH CAROLINA v. JEROME PHILLIPS

No. 29

(Filed 15 July 1980)

1. Jury § 6.3— voir dire examination—collective examination of jurors required—no error

Defendant was not prejudiced where defense counsel, during selection of the jury, asked a juror if defendant would have to prove anything to her before he would be entitled to a verdict of not guilty, and the court requested counsel to direct questions of a general nature to all twelve jurors, since the question which prompted the court's intervention is disapproved; counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided; counsel should not argue the case in any way while questioning the jurors;

State v. Phillips

counsel should not engage in efforts to indoctrinate, visit with or establish "rapport" with jurors; jurors should not be asked what kind of verdict they would render under certain named circumstances; and questions should be asked collectively of the entire panel whenever possible.

2. **Constitutional Law § 31— indigent defendant—provision of daily transcript not required**

A daily transcript is not a necessary expense of representation which the State is required to provide an indigent defendant under G.S. 7A-450(b).

3. **Arrest and Bail § 3.1— warrantless arrest—probable cause**

An officer had probable cause to arrest defendant for first degree burglary where the officer was well acquainted with defendant; he had heard a resident of the burglarized home describe the intruder as a black male, 18-20 years old, wearing a dark coat, a tan cap and medium to dark pants, six feet tall and weighing about 185 pounds, with no facial hair; the officer knew that description fit defendant; he also knew that defendant had committed this type of crime in the same town on previous occasions and that he had been convicted of larceny at least six times and of breaking and entering and larceny three or four times; and the officer found defendant one block from the crime scene wearing a dark blue coat, medium blue pants and generally fitting the description of the intruder.

4. **Searches and Seizures § 44— motion to suppress—voir dire hearing—findings of fact not made**

Denial of defendant's motion to suppress items taken from him incident to his warrantless arrest without specific findings of fact did not constitute prejudicial error, since the evidence on voir dire was uncontradicted and since the court did specifically conclude that the officer had probable cause to effect the arrest.

5. **Burglary and Unlawful Breakings § 5— first degree burglary—sufficiency of evidence**

Evidence in a first degree burglary case was sufficient to be submitted to the jury where it tended to show that a witness awoke at 2:30 a.m. and saw a man standing in her bedroom; the description of the intruder given to police officers by the witness fit defendant; the witness screamed and the intruder, after unsuccessfully trying to cover the witness's mouth with his hands, dived out of the window; the window screen had been removed; the witness's watch and bracelet were missing from her bedroom; defendant was apprehended about one and one-half hours later one block from the crime scene; the watch and bracelet were found on defendant's person; and defendant's shoe soles and heels matched the shoe impressions on the ground under the witness's bedroom window.

Justice BROCK did not participate in the consideration or decision of this case.

DEFENDANT appeals from judgment of *Long, J.*, 2 July 1979 Session, PITT Superior Court.

State v. Phillips

Defendant was tried upon a bill of indictment, proper in form, charging him with first degree burglary.

Wendy Jones, fourteen-year-old daughter of Wilbur Jones, testified that on 28 April 1979 she awoke about 2:30 a.m. and saw a man standing in her bedroom. She screamed and he tried, without success, to cover her mouth with his hands. He was a black man about 6 feet tall, weighing 180 pounds and wearing a dark coat, a tan cap with a snap-on bill, and what appeared to be medium blue pants. When she continued to scream, the man dived out of the window. Wendy stated that the screen on the window to her room had been removed; and that her gold watch with a mesh band and her metal bracelet, together worth about $30, were missing from the bedroom. Miss Jones identified State's Exhibit 1 as her watch and State's Exhibit 2 as her bracelet. She could not identify defendant but said he was about the same size as the intruder.

Chief of Police Burney testified that in answer to a call he went to the Jones residence where Wendy Jones told him a young black male about eighteen to twenty years old, wearing a dark coat and a tan cap, had been in her room but fled through the window when she continued to scream. Chief Burney said he examined the premises and found that the intruder had entered Wendy's room on the west side where the window screen was lying out in the yard; that he found shoe prints around the garbage can in the shrubbery under the window.

Chief Burney further testified that after talking with the Jones family he began patrolling. About one and one-half hours later he saw three persons, including defendant Jerome Phillips, on East Third Street, only one block from the crime scene. He carried defendant to the police station, advised him of his rights, and asked to see the bottom of his shoes. He wanted to look at his shoe heels because he had observed shoe prints at the Jones residence. Defendant lifted his foot and Chief Burney caught defendant by the ankle to hold the shoe up while he looked at it. When he did so, Chief Burney felt some type of metal object at the side of defendant's leg under the sock. He ran his hand into defendant's sock to determine what the object was and found a

bracelet in the left sock and a watch in the right sock, State's Exhibits 1 and 2. Defendant offered no explanation as to how he came into possession of the bracelet but said the watch belonged to his "sister" Janice Taylor. Defendant first said he had been asleep at the residence of Helen Collins at the time the burglary was allegedly committed but later changed his story and said he had been sleeping in a truck behind Walter Gardner's house, next door to the Helen Collins residence.

Janice Taylor testified that defendant never got the watch, State's Exhibit 1, from her; that she had never seen that watch before the trial and had never conversed with defendant concerning it.

Further evidence for the State tends to show that Helen Collins lived with a man named Hosie Gordon at 822 East Third Street in Ayden; that no truck of any kind was parked on those premises on the night in question; that defendant had not slept there that night; that there was a truck at the Gardner residence but it was an old abandoned truck which was locked up and full of debris.

Defendant's shoe soles and heels matched the shoe impressions on the ground under the bedroom window of Wendy Jones.

Defendant offered no evidence. The jury convicted him of burglary in the first degree, and he was sentenced to life imprisonment. He appeals, assigning errors noted in the opinion.

*Rufus L. Edmisten, Attorney General, by William F. Briley, Assistant Attorney General, for the State.*

*Robert L. White, for defendant appellant.*

HUSKINS, Justice.

[1]  When jury selection began, defense counsel asked Juror No. 2 if defendant would have to prove anything to her before he would be entitled to a verdict of not guilty. At that point, the court requested counsel to direct questions of a general nature to all twelve jurors. The court then permitted counsel to ask all twelve jurors if they would follow the court's instructions, the burden being on the State to prove the guilt of the defendant beyond a reasonable doubt. Nothing in the record indicates that

the court imposed any further restriction upon defense counsel's ability to examine each prospective juror individually. Defendant took exception to the ruling and this constitutes his first assignment of error.

No violation of G.S. 15A-1214(c) is shown. The action of the trial judge did not deprive defendant of his right to question each prospective juror personally and individually concerning his fitness and competency to serve as a juror and did not impair counsel's ability to determine whether there was a basis for a challenge for cause or whether a peremptory challenge should be exercised with respect to any particular juror. G.S. 15A-1214(c) does not preempt the exercise of all discretion by the trial judge during the jury selection process. It remains the prerogative of the court to expedite jury selection by requiring certain general questions to be submitted to the panel as a whole. *State v. Leonard*, 296 N.C. 58, 248 S.E. 2d 853 (1978). The presiding judge has the duty "to supervise the examination of prospective jurors and to decide all questions relating to their competency." *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975), *death sentence vacated*, 428 U.S. 903 (1976). *Accord, State v. Leonard, supra; State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978). The trial judge has broad discretion "to see that a competent, fair and impartial jury is impaneled and rulings of the trial judge in this regard will not be reversed absent a showing of abuse of discretion." *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

In the instant case, no abuse of discretion is shown. In fact, it is the duty of the judge to expedite the trial in every appropriate way. Here, the question which prompted the court's intervention is disapproved. Counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. Counsel should not argue the case in any way while questioning the jurors. Counsel should not engage in efforts to indoctrinate, visit with or establish "rapport" with jurors. Jurors should not be asked what kind of verdict they would render under certain named circumstances. Finally, questions should be asked collectively of the entire panel whenever possible. Here, the patient trial judge was simply trying to expedite jury selection by requiring *appropriate* interrogation. He is to be commended for it. Defendant's first assignment of error is overruled.

Defendant's motion for a daily transcript of the trial proceedings was denied. The ruling of the court in this respect constitutes his next assignment of error.

G.S. 7A-450(b) provides in pertinent part that when a defendant is determined to be indigent and entitled to counsel, as here, "it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation." Defendant contends that a daily transcript comes within the ambit of "other necessary expenses." For reasons which follow, we find no merit in this contention.

[2] Defendant relies on the statute together with the holdings in *Douglas v. California*, 372 U.S. 353, 9 L.Ed. 2d 811, 83 S.Ct. 814 (1963), and *Griffin v. Illinois*, 351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585 (1956). Neither *Douglas* nor *Griffin*, nor the statute itself, nor any other authority of which we are aware, suggests that a daily transcript is a necessary element of defense which the State is required to supply to an indigent defendant. Moreover, the case before us is a very simple one. It was tried in two days. To suggest that a daily transcript was necessary to enable counsel to make an adequate defense is rather ludicrous. We hold that a daily transcript is not a necessary expense of representation which the State is required to provide an indigent defendant under G.S. 7A-450(b). Moreover, defendant has not been deprived of any of his constitutional rights by the State's failure to furnish a daily transcript. This assignment is overruled.

[3] Defendant moved to suppress the watch and bracelet (S-1 and S-2) on the ground that Chief Burney had no probable cause to arrest him and that the subsequent search of his person was therefore unlawful. Denial of this motion constitutes defendant's third assignment of error.

G.S. 15A-401(b) provides in pertinent part that an officer may arrest without a warrant for an offense committed out of his presence if he has probable cause to believe that the person arrested has committed a felony. The record in this case shows that Chief Burney was well acquainted with defendant; that he had heard Wendy Jones describe the intruder as a black male, eighteen to twenty years old, wearing a dark coat, a tan cap and medium to dark pants, 6 feet tall and weighing about 185 pounds, with no facial hair. *Chief Burney knew that description fit defend-*

*ant Phillips.* He also knew Phillips had committed this type of crime in the town of Ayden on previous occasions; that he had been convicted of larceny at least six times and of breaking and entering and larceny three or four times. Thus, when Chief Burney found defendant one block from the crime scene wearing a dark blue coat, medium blue pants and generally fitting the description of the intruder, he had probable cause to believe that defendant had committed the felony of burglary and to arrest him without a warrant. *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971).

Probable cause for an arrest has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. One does not have probable cause unless he has information of facts which, if submitted to a magistrate, would require the issuance of an arrest warrant." 5 Am. Jur. 2d, Arrest § 44. The existence of probable cause so as to justify an arrest without a warrant "is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." 5 Am. Jur. 2d, Arrest § 48. *Accord, State v. Phifer,* 297 N.C. 216, 254 S.E. 2d 586 (1979); *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971); *Brinegar v. United States,* 338 U.S. 160, 93 L.Ed. 1879, 69 S.Ct. 1302 (1949).

The totality of the facts and circumstances known to Chief Burney would have constituted probable cause for the issuance of an arrest warrant. It is immaterial that some of the information he possessed might not be competent in evidence at the trial. *State v. Hoffman,* 281 N.C. 727, 190 S.E. 2d 842 (1972); *State v. Roberts,* 276 N.C. 98, 171 S.E. 2d 440 (1970); *Brinegar v. United States, supra.*

[4] Defendant further contends in connection with this assignment that, even if probable cause for arrest without a warrant existed, the trial court failed to make the necessary findings of fact

and conclusions of law following the voir dire upon his motion to suppress and for that reason, if no other, the evidence should have been suppressed.

G.S. 15A-977(d) provides that if the motion to suppress is not determined summarily, the judge must make the determination after a hearing and findings of fact. Subparagraph (f) provides that "the judge must set forth in the record his findings of fact and conclusions of law."

The evidence on voir dire consisted only of the testimony of Chief Burney. His testimony was unrefuted. Following it, the court made the following entry:

"The Court finds that under the undisputed evidence offered in this case, on this point, the officer had probable cause to effect the arrest and that the subsequent search was not outside of the scope of the permitted authority of the arresting officer. Therefore, I would deny the motion to suppress. Further findings will be made in due course when the Court has had time to prepare those in the absence of the jury."

No further findings appear of record, and we assume the trial judge simply forgot to make them.

When the competency of evidence is challenged and the trial judge conducts a voir dire to determine admissibility, the general rule is that he should make findings of fact to show the bases of his ruling. *State v. Silver*, 286 N.C. 709, 213 S.E. 2d 247 (1975). If there is a material conflict in the evidence on voir dire, he *must* do so in order to resolve the conflict. *State v. Smith*, 278 N.C. 36, 178 S.E. 2d 597, *cert. denied*, 403 U.S. 934 (1971). If there is no material conflict in the evidence on voir dire, it is not error to admit the challenged evidence without making specific findings of fact, although it is always the better practice to find all facts upon which the admissibility of the evidence depends. *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976); *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976). In that event, the necessary findings are implied from the admission of the challenged evidence. *State v. Whitley*, 288 N.C. 106, 215 S.E. 2d 568 (1975).

Here, although further findings were inadvertently omitted by the trial judge, he did specifically conclude that the officer had

probable cause to effect the arrest—a conclusion based upon the State's undisputed evidence. There was no evidence to the contrary. Under the circumstances of this case, we hold that denial of the motion to suppress without further specific findings of fact does not constitute prejudicial error. Defendant's third assignment of error is overruled.

During the cross-examination of State's witness Wendy Jones defense counsel asked her to "tell us everything that you told the Chief," and the witness replied that she had done so. Counsel then said: "Tell us again, Miss Jones, if you don't mind." The court intervened, saying: "In the interest of time, I would not want the witness to have to repeat everything she says she may have told him. If you have any specific other questions, you may ask her." Defendant's Exception No. 9 is based on that ruling. On redirect examination of this witness, the prosecutor asked her to "state for us again how the height, body build, of the man you saw in your room compared with the height and body build of the defendant." Defendant's objection was overruled, and the witness answered "about the same." Defendant's Exception No. 10 is based on this ruling. Defendant's Assignment of Error No. 4 is based on his Exceptions 9 and 10. Defendant contends that when the court would not permit him to elicit from the witness a repetition of her testimony but later permitted the prosecution to do so, it amounted to an expression of opinion by the court and was tantamount to judicial leaning.

There is no merit in this assignment. Repetitious questions are properly excluded, *State v. Coleman*, 215 N.C. 716, 2 S.E. 2d 865 (1939), and the admission or exclusion of answers to repetitious questions are matters within the sound discretion of the trial court. There is nothing in these rulings to show bias on the part of the court.

[5] Defendant's motion for nonsuit at the close of the State's evidence was overruled, and properly so. The motion required the trial court to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49 (1968). Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged had been

committed and that defendant committed it, the motion for nonsuit should be overruled. *State v. Jolly*, 297 N.C. 121, 254 S.E. 2d 1 (1979). The evidence in this case, when so considered, points unerringly to defendant as the burglar. There is substantial evidence of every material element of the offense, including the intent to steal. It was therefore a question for the jury. Defendant's fifth assignment is overruled.

Defendant's motions to set aside the verdict and for a new trial are merely formal and require no discussion. Such motions are addressed to the discretion of the trial court and refusal to grant them is not reviewable. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). These motions were properly denied. Defendant's sixth assignment of error is overruled.

Defendant has had a fair trial free from prejudicial error. The verdict and judgment must therefore be upheld.

No error.

Justice BROCK did not participate in the consideration and decision of this case.