STATE OF NORTH CAROLINA v. KWAME JAMAL TEAGUE

No. COA98-1176

(Filed 7 September 1999)

## 1. Jury— voir dire—circumstantial evidence—impartiality

The trial court did not err in a kidnapping, robbery, and murder case by allowing the State's voir dire questions informing the prospective jurors that: (1) only the three people charged with the crimes knew what happened to the victims and none would testify against the others, because these statements properly informed the jury that the State would be relying on circumstantial evidence and inquired as to whether the lack of eyewitnesses would cause the jurors any problems; and (2) there would be evidence that on the night of the crimes the victims may have been looking for drugs, because the statement was a proper inquiry to determine the impartiality of the jurors.

## 2. Evidence— subsequent crime or act—accomplice—harmless error

Although the trial court erred in admitting irrelevant evidence of an accomplice's robbery and attack of another person following the kidnapping, robbery, and murder of the two victims, it was harmless error in light of the substantive evidence against defendant.

**3. Constitutional Law— self-incrimination—handwriting samples**

The trial court did not err in admitting evidence that defendant refused to comply with a search warrant to obtain samples of his handwriting because the Fifth Amendment privilege against compulsory self-incrimination does not extend to physical characteristics such as handwriting and blood samples.

**4. Witnesses— expert testimony—intent to cause death**

The trial court did not err in admitting the forensic expert's testimony that one of the victim's gunshot wounds to the head was consistent with an intent to cause death because "intent to cause death" is not a precise legal term with a definition that is not readily apparent. Even if it was error to admit the testimony, it was harmless in light of the other substantive evidence supporting the conclusion that both victims' deaths were consistent with a specific intent to cause their death.

Appeal by defendant from judgment entered 31 May 1996 by Judge Wiley Bowen, Superior Court, Wayne County. Heard in the Court of Appeals 19 August 1999.

*Margaret Creasy Ciardella for the defendant.*

*Michael F. Easley, Attorney General, by Ronald M. Marquette, Assistant Attorney General, for the State.*

WYNN, Judge.

In November 1995, a jury found that defendant Kwame Jamal Teague—along with Edward Lemons and Larry Leggett—kidnapped, robbed, and murdered Margaret Strickland and Bobby Stroud. The trial court sentenced the defendant to two life terms for the first-degree-murder convictions, two terms of fourteen years for the first-degree-kidnapping convictions, and two terms of twelve years for the armed-robbery convictions—all sentences to run consecutively.

The State's evidence at trial tended to show that on 22 January 1994 the gunshot bodies of Ms. Strickland and Mr. Stroud were found in a field located near Goldsboro, North Carolina. Investigating officers found shell casings and shoe impressions near the bodies. Thereafter, the investigators found at Leggett's and Lemons' house—located near the crime scene—a pair of shoes in Lemons' suitcase matching the imprints at the crime scene.

On 27 January 1994, the investigators located the vehicle that Ms. Strickland had borrowed from her mother two days prior to the discovery of the bodies. On a cassette tape in that vehicle, the investigators discovered the defendant's fingerprint.

In an interview with the investigators, the defendant admitted to helping plan and participating in the robbery of the victims. He stated that after the robbery, he urged the other men to leave the field; but instead, Lemons refused to leave and shot Mr. Stroud. He stated that he then ran away from the field.

On appeal, defendant does not dispute the sufficiency of the State's evidence; instead, he opposes several trial court rulings involving the State's jury *voir dire* and the admission of evidence. To the extent that the defendant has failed to comply with the North Carolina Rules of Appellate Procedure in bringing this appeal, we exercise our discretion under Appellate Rule 2 and address the merits of the case.

## I. JURY *VOIR DIRE*

In North Carolina, our trial courts allow counsel wide latitude in examining jurors on *voir dire;* and, the extent and manner of the inquiry rests within the trial judge's discretion. *See State v. Locklear,* 349 N.C. 118, 142, 505 S.E.2d 277, 291 (1998). Thus, to successfully challenge the extent and manner that the trial judge allowed *voir dire* of jurors, the defendant must show an abuse of that discretion. *See id.*

[1] The defendant argues that the State's *voir dire* questions as to (1) the absence of eyewitness testimony and (2) the victims' possible involvement with drugs, constituted "staking out" questions which caused the jurors to pledge themselves to a future course of action.

In *State v. Phillips,* 300 N.C. 678, 268 S.E.2d 452 (1980), our Supreme Court held that during *voir dire,* counsel should not "fish" for answers to legal questions before the judge has instructed the jurors on applicable principles.

Counsel should not engage in efforts to indoctrinate, visit with or establish 'rapport' with jurors. Jurors should not be asked what kind of verdict they would render under certain named circumstances.

*Id.* at 682, 268 S.E.2d at 455.

In this case, the prosecutor informed the prospective jurors that only the three people charged with the crimes know what happened to the victims. He stated that none of the three would testify against the others and therefore the State did not have any eyewitness testimony to offer. The defendant challenges the prosecutor's inquiry to the prospective jurors that:

> Knowing that and knowing that this is a serious case, a first degree murder case, do you feel like you have to say to yourself, well, the case is just too serious . . . to decide based on circumstantial evidence and I would require more than circumstantial evidence to return a conviction of guilty of first degree murder.

We hold that these statements did not violate any of the rules enunciated in *Phillips*. *See State v. Clark*, 319 N.C. 215, 221, 353 S.E.2d 205, 208 (1987) (holding that the prosecuting attorney's question, which merely informed jurors that the State would rely on circumstantial evidence and asked them whether a lack of eyewitnesses would cause them problems, was not improperly argumentative or hypothetical, did not improperly "precondition" jurors to believe there were no eyewitnesses, and was not designed to ask what kind of verdict the jury would render under certain named circumstances) (quoting *Phillips*, 300 N.C. at 682, 268 S.E.2d at 455). Rather, these statements properly (1) informed the jury that the State would be relying on circumstantial evidence and (2) inquired as to whether the lack of eyewitnesses would cause them problems.

The prosecutor also stated to the prospective jurors that there would be evidence that on the night of the crimes, the victims may have been looking for drugs. The defendant challenges the prosecutor's statement that:

> The question for you to consider if that information should come out and I am certain it will and you hear that information, do you feel like that you will automatically turn off the rest of the case and predicate your verdict of not guilty solely upon the fact that these people were out looking for drugs involved in the drug environment and became victims as a result of that.

We hold that the prosecutor properly made this inquiry to determine the impartiality of jurors. *See State v. Williams*, 41 N.C. App. 287, 291-92, 254 S.E.2d 649, 653 (1979) (holding that the trial court did not err in permitting the district attorney to tell prospective jurors on *voir dire* that a proposed sale of marijuana was involved in the case

to be tried when the attorney's statements were made to inquire as to whether any of them would be unfair and impartial for that reason).

The defendant next argues that the trial court improperly limited *voir dire* of a prospective juror in violation of the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution and Article I, Section 19 and 24 of the North Carolina Constitution. He asserts that the trial court erred in sustaining the State's objections to the following questions regarding the prospective juror's possible bias toward law enforcement officers:

Q. Okay. Do you feel indebted in any way to these officers? Would you feel that way when they came into Court? If so, let us know?

A. Well, I would tend to.

MR. JACOBS: Object.

THE COURT: Sustained.

Q. (Mr. Jones) Would you tend to, based on your relationship with these officers, be predisposed towards anything they might say?

MR. JACOBS: Object.

THE COURT: Sustained.

Q. Would you tend to give anymore weight to what these officers may say?

A. I would trust them.

Q. Do you think that will anyway predispose you toward a decision before you heard all the evidence?

MR. JACOBS: Object. Object to the form of the question.

THE COURT: Sustained.

Q. (Mr. Jones) Due to the fact that there are police officers involved in this case and this may apply to all of you, do you believe that a police officer's testimony is worthy of any more weight than a lay witness.

MR. JACOBS: Object.

THE COURT: Sustained. Form of the question.

The record reveals that the trial court gave the defendant ample opportunity to inquire into the juror's potential bias in favor of law enforcement. *See Locklear*, 349 N.C. at 142, 505 S.E.2d at 291. In fact, the defense counsel continued to inquire into the possibility of the prospective juror's bias in favor of potential witnesses—who were members of law enforcement—following the State's objections to the questions at issue in this case. Notably, the trial court apparently sustained the objections based on the improper form of the questions because the trial court allowed the defense counsel to rephrase the questions. Furthermore, the defendant subsequently excused the prospective juror. *See State v. Elliot*, 344 N.C. 242, 266, 475 S.E.2d 202, 211 (1996).

In sum, we find no abuse of discretion on the part of trial court in the manner and extent to which he allowed *voir dire* of the prospective jurors.

## II. ADMISSION OF EVIDENCE

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). With some exceptions, all relevant evidence is generally admissible. *See* N.C. Gen. Stat. § 8C-1, Rule 402 (1992). However, "[e]vidence which is not relevant is not admissible." *Id.*

[2] The defendant argues—and we agree—that the trial court erred in admitting evidence of Lemon's robbery and attack of another person following the victims' deaths because that evidence was not relevant to the issue of the defendant's involvement with the victims' deaths.

However, to prove prejudicial error "an appellant must show that there is a reasonable possibility that, had the error not been committed a different result would have been reached at trial." *State v. Martin*, 322 N.C. 229, 238-39, 367 S.E.2d 618, 623-24 (1988). In light of the substantive evidence against the defendant, we cannot hold that the result would have been different had the evidence surrounding Lemon's subsequent crime been excluded. Therefore, the resulting error constituted harmless error.

[3] Secondly, the defendant asserts that the trial court erred in admitting evidence that he refused to comply with a search warrant to obtain samples of his handwriting.

However, the "Fifth Amendment privilege against compulsory self-incrimination does not extend to physical characteristics such as handwriting and blood samples." *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L. Ed.2d 908 (1966). Thus, a defendant's refusal may be admissible and is not treated the same as a defendant's failure to testify. *See State v. McNeil*, 99 N.C. App. 235, 243, 393 S.E.2d 123, 127 (1990) (holding the testimony that a defendant refused to allow a rape victim to view him immediately after his arrest near the crime scene was properly admitted); *cf. State v. Roberts*, 243 N.C. 619, 91 S.E.2d 589 (1956) (holding that comment may not be made regarding the failure of a defendant to testify in a criminal prosecution). Given the relevancy of defendant's refusal to comply with the search warrant, the trial court's admission of this evidence was proper.

**[4]** Finally, the defendant contends that the forensic expert's testimony—that one of the victim's "gunshot wounds to the head was consistent with an intent to cause death"—was irrelevant and highly prejudicial. We disagree.

Expert witness testimony is admissible if it will " 'assist the jury to draw certain inferences from facts because the expert is better qualified' than the jury to form an opinion on the particular subject." *State v. Fletcher*, 92 N.C. App. 50, 56, 373 S.E.2d 681, 685 (1988) (quoting *State v. Bullard*, 312 N.C. 129, 139, 322 S.E.2d 370, 376 (1984)); *see* N.C. Gen. Stat. § 8C-1, Rule 702 (1992). In fact, experts are permitted to give their opinion even though "it embraces an ultimate issue to be decided by the trier of fact." N.C. Gen. Stat. § 8C-1, Rule 704 (1992).

An expert, however, may not testify as to a legal standard that has been met. *See State v. Ledford*, 315 N.C. 599, 617, 340 S.E.2d 309, 321 (1986). Despite this rule, a medical expert is not precluded from testifying to his or her opinion that the defendant could not form a "specific intent to kill." *See State v. Daniel*, 333 N.C. 756, 429 S.E.2d 724 (1993). The reason is because the term "specific intent to kill" is not a precise legal term with a definition which is not readily apparent. *Id.*

Here the defendant challenges the expert's opinion testimony that one of the victim's "gunshot wounds to the head was consistent with an intent to cause death." Under the facts present in this case, we find the term "intent to cause death" to be synonymous with the term "specific intent to kill." Thus, the term "intent to cause death" is

not a precise legal term with a definition which is not readily apparent. *Id.* Consequently, the trial court's admission of the expert witness testimony was proper.

Even assuming *arguendo* that the trial court's admission of the expert witness testimony constituted an error, such error was harmless because the State presented other substantive evidence supporting the conclusion that both victims' deaths were consistent with a specific intent to cause their death. *See State v. Marshall*, 92 N.C. App. 398, 404, 374 S.E.2d 874, 877 (1988).

We conclude that the defendant was given a fair trial, free of prejudicial error.

No prejudicial error.

Judges JOHN and EDMUNDS concur.