STATE OF NORTH CAROLINA
v.
JERRY JEROME TERRANCE, II, Defendant.
No. COA07-90
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Vaughn S. Monroe, for the State.
Anne Bleyman for defendant.
ELMORE, Judge.
Jerry Jerome Terrance, II (defendant) appeals from his convictions for breaking and entering and larceny after breaking and entering. For the reasons stated below, we find no error.
At trial, the State presented evidence tending to show the following: On 25 March 2003, defendant and Alphonso Gibbs were riding in a Jeep driven by Michael Esser when they decided to break into a tattoo shop. After breaking and unlatching a window of the shop, Gibbs crawled through the window and opened the door for the other two men. They took tattoo equipment and supplies along with various other items. During a search of defendant's home that began during the late night hours of 26 June 2003 and concluded during the early morning hours of 27 June 2003, Chief Deputy Erving Elks and another officer took defendant into custody for resisting, delaying, and obstructing. Officer Jerry Davis began interviewing defendant at 3:35 a.m. on 27 June 2003, and asked defendant specifically if he was involved in the tattoo shop break-in. After defendant denied any involvement, Officer Davis did not ask him any further questions about that break-in.
At approximately 5:30 p.m. on 27 June 2003, Deputy Elks also interviewed defendant and asked him questions unrelated to the tattoo shop break-in. When Deputy Elks testified that defendant had mentioned the tattoo shop during the interview, defense counsel objected and the trial court conducted a voir dire hearing. Deputy Elks then testified that defendant was under arrest at the time of his interview, but that he was not under arrest for the tattoo shop break-in. He stated that defendant was initially uncooperative with officers and was placed in the same jail as Gibbs and Esser. Deputy Elks described how the men began yelling to one another in the jail, and how each of them began to think that the others were telling on them. Later that day, defendant asked to speak with Deputy Elks.
After he was brought to Deputy Elks' office and advised of his Miranda rights, defendant signed a rights waiver at 5:45 p.m., indicating that he did wish to speak with Deputy Elks. Deputy Elks questioned defendant about an unrelated case, and defendant stated that he was just the lookout for the tattoo shop break-in. Deputy Elks called Officer Davis and allowed defendant to speak with him on the telephone, and Deputy Elks heard defendant tell Officer Davis that he was just a lookout and did not actually go into the building. Deputy Elks then proceeded to question defendant further about unrelated cases.
At the conclusion of the voir dire hearing, the trial court asked defense counsel if there was "[a]nything further with regard to whether or not [defendant] was properly advised of his rights[?]" Defense counsel responded in the negative and indicated that he was not going to pursue the matter. Upon the jury's return, Deputy Elks testified about his interview of defendant in substantial conformity with his voir dire testimony. At the close of the State's evidence, defendant moved to dismiss the charges. The trial court denied the motion, and it denied the motion again when defendant renewed the motion at the close of all of the evidence. After receiving the trial court's instructions, the jury found defendant guilty of felonious breaking and entering and of larceny after breaking and entering. The trial court imposed consecutive sentences with a combined term of twenty to twenty-four months' imprisonment. From the trial court's judgments, defendant appeals.
Defendant contends that the trial court committed either error or plain error by admitting his custodial oral statements, the rights waiver, and related testimony. He argues that his oral statements are inadmissible because police officers did not scrupulously honor his invocation of his Fifth Amendment right to remain silent. We disagree.
Before assessing whether the trial court committed plain error, we must first determine whether there was error at all. See State v. Torain, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986). In ruling on a motion to suppress a custodial statement, "[t]he trial court makes the initial determination as to whether an accused has waived his right to counsel." State v. Peterson, 347 N.C. 253, 255, 491 S.E.2d 223, 224 (1997). Pursuant to N.C. Gen. Stat. § 15A-977(f), the trial court "must set forth in the record [the] findings of facts and conclusions of law" supporting its determination. N.C. Gen. Stat. § 15A-977(f) (2005). In this case the trial court failed to make any written findings and conclusions regarding defendant's motion. However, "[i]f there is no material conflict in the evidence on voir dire [sic], it is not error to admit the challenged evidence without making specific findings of fact . . . . In that event, the necessary findings are implied from the admission of the challenged evidence." State v. Phillips, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980) (citations omitted). Because there was no material conflict in the evidence presented during voir dire, the trial court did not err by failing to make written findings of fact in support of its admission of the evidence.
Nothing in the record before this Court shows whether Officer Davis advised defendant of his Miranda rights prior to questioning him at 3:35 a.m. on 27 June 2003. Nor was there any showing of whether defendant invoked his Miranda rights at that time. The record only shows that Officer Davis ceased questioning defendant about the tattoo shop break-in after he denied involvement in it. Assuming arguendo that defendant did invoke his Fifth Amendment rights at the conclusion of this first interview by Officer Davis, defendant waived those rights when he initiated further communication with Deputy Elks fourteen hours later. See State v. Boggess, 358 N.C. 676, 688, 600 S.E.2d 453, 461 (2004) (holding that a defendant's Fifth Amendment rights are not violated when "the record . . . reflects that the genesis of [a] statement was [a] defendant's request to speak with the investigators").
Although defendant asserts that his subsequent waiver of rights was limited to questioning about an unrelated charge, he provides no authority to support this assertion. It is "[t]hrough the exercise of his option to terminate questioning [that an individual] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." Michigan v. Mosley, 423 U.S. 96, 103-04, 46 L. Ed. 2d 313, 321 (1975) (emphasis added). From the record before this Court, it appears that defendant volunteered the additional information about the tattoo shop break-in during questioning about unrelated cases. If Deputy Elks did, in fact, initiate the inquiry about the break-in of the tattoo shop, defendant failed to exercise his option of terminating the interview. The rights waiver form signed by defendant was therefore relevant to the admissibility of the statements about the tattoo shop break-in, which defendant made to Deputy Elks and to Officer Davis on the telephone. Defendant also waived any objection to related testimony by failing to object to it. See N.C.R. App. P. 10(b)(1) (2007). We therefore find no error, much less plain error, in the trial court's admission of defendant's custodial statements, the rights waiver and the related testimony.
Defendant has failed to set out his remaining assignments of error in his brief. Because he has neither cited any authority nor stated any reason or argument in support of those assignments of error, they are deemed abandoned. See N.C.R. App. P. 28(b)(6) (2007).
No error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).