IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-384

Filed 18 February 2026

Forsyth County, Nos. 18CR057768-330, 18CRS057769-330, 19CR000953-330

STATE OF NORTH CAROLINA

v.

RAYMOND RASHON CROWDER, Defendant.

Appeal by Defendant from judgment entered 28 June 2022 by Judge Richard S. Gottlieb in Forsyth County Superior Court. Heard in the Court of Appeals 29 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Herman M. Little, Jr., for the State.*
>
> *Reid H. Cater for defendant-appellant.*

STADING, Judge.

Raymond Rashon Crowder ("Defendant") appeals from final judgment after a jury found him guilty of possession of a firearm by a convicted felon, carrying a concealed gun, and possession of marijuana up to one-half ounce. Defendant contends the trial court erred by allowing a juror to remain on the jury. Defendant also contends that he received ineffective assistance of counsel ("IAC"). After careful consideration, find no error and dismiss Defendant's IAC claim without prejudice.

## I.  Background

On 18 November 2019, the Forsyth County Grand Jury returned true bills of indictment charging Defendant with possession of a firearm by a convicted felon, having attained habitual felon status, carrying a concealed gun, and possession of marijuana up to one-half ounce.  Defendant's trial commenced on 13 June 2022.

The evidence in the record tends to show when the jury had not yet been impaneled, a potential juror—Juror Smith, had already been examined and passed on by both the State and Defendant's counsel when she expressed a concern:

> [Juror Smith]: I have a quick concern that over break it bothered me quite a bit. Am I allowed to share that concern? It potentially could put me into a bias situation and I want to make sure that everybody is aware.

In response, the trial court excused the other potential jurors while Juror Smith remained in the courtroom.  Juror Smith informed the trial court:

> Before we took a break, I noticed the defendant several times put his head down and fell asleep, which to me is disrespect to the current situation and lack of concern for what's happening. I'm just afraid that I'm going to come in tomorrow and not be able to hear evidence and see it as equal sides. I just wanted to share that concern.

The trial court replied: "If I instruct you to disregard that and base your decision on the evidence that's presented during trial, can you accept that instruction?"  To which Juror Smith stated, "I don't know that I can, in full faith. I feel like that was hugely disrespectful to the situation."

The trial court asked whether the prosecutor or Defendant's counsel had any

response to Juror Smith's statement. The prosecutor responded in the negative. Defendant's counsel asked Juror Smith if she "talk[ed] to anybody else in the jury pool about [her] concern?" She replied: "I did not speak to any other person." Defendant's counsel informed the trial court it had "[n]o other questions[.]" The trial court then requested the prosecutor and Defendant's counsel to approach and held an off-the-record bench conference with the prosecutor and Defendant's counsel. At this time, Defendant's counsel did not move to strike Juror Smith.[1] After the bench conference, the trial court brought the potential jurors back into the courtroom for the resumption of voir dire. Once the last potential alternate juror was questioned, Defendant's counsel stated, "we're satisfied," and the jury was impaneled. The trial court gave precautionary instructions to the jury, followed by the parties' opening statements.

After opening statements, the trial court excused the jury for the day. The trial court then noted: "Counsel, we had two or three brief bench conferences . . . during the course of the afternoon. One of which was to address comments made by . . . [Juror] Smith. Anything from the State with regard to her comments?" The State responded in the negative. Defendant responded in the affirmative:

> Yes, Your Honor. Thank you. On behalf of [Defendant], at the bench conference it became clear that any further challenge that I would make was going to be denied, as to

---

[1] Defendant's counsel exercised peremptory strikes to excuse three jurors but did not do so to excuse Juror Smith.

whether or not [Juror] Smith would be able to remain and be fair and impartial under the circumstances. I know that the Court did give some instruction and will certainly do that again at a later date, but in terms of a ground for a challenge for cause pursuant to 15(a)12-12, I certainly was concerned by hearing [Juror] Smith indicate that she might not be able to treat [Defendant] fairly and impartially based on her observations during jury selection.

I, of course, had already passed on her. I do not believe I would have been able to raise any other challenge, except for the for cause challenge. So I would just object for the record about including [Juror Smith] in the panel. That's all.

The trial court thanked Defendant's counsel and replied, "the motion to strike or replace [Juror Smith] is denied. I'll note your exception for the record." After this discussion, the trial court recessed court for the evening.

The next day, the State presented testimony from Deputy Cline of the Forsyth County Sherriff's Office, who was employed by the Kernersville Police Department at the time of his encounter with Defendant on 21 August 2018. Deputy Cline recounted initiating a traffic stop after noticing a blue passenger vehicle without illuminated taillights. Upon initiating a traffic stop, he approached the vehicle's passenger side, told Defendant the reason for the stop, and requested Defendant's identification. Defendant was operating the vehicle with two passengers inside. Deputy Cline could not recall whether Defendant produced a driver's license or identification card but noted Defendant's license was not active. Deputy Cline then approached the driver's side of the vehicle and detected an odor of marijuana emanating from the vehicle.

Deputy Cline inquired about the odor and Defendant replied he had smoked outside the vehicle at an earlier time. Deputy Cline then requested Defendant to step outside the vehicle. Sometime thereafter, Defendant pulled out a $20 bill, which contained "a green vegetable substance that was emitting a raw odor of marijuana."

After taking the substance and placing it on his patrol car, Deputy Cline conducted a search of Defendant's person. During the search, Deputy Cline recounted Defendant removed one of his shoes, and he "heard a metallic sound hit the ground." Deputy Cline was alerted to a gun lying on the ground near Defendant. The firearm was later described as a "Phoenix Arms Raven 25" handgun. Defendant was handcuffed and placed in the back of Deputy Cline's patrol car.

The State also presented testimony from Officer Wemlinger of the Kernersville Police Department. Upon arrival to assist with the stop, Officer Wemlinger "stood by with the passengers of the vehicle" while Deputy Cline searched Defendant. At some point, Officer Wemlinger heard a "metal noise colliding with the ground." Officer Wemlinger shined his flashlight on "the area right underneath" Defendant and saw Defendant's "left foot stand on -- or basically step on a pistol, firearm." Officer Wemlinger immediately notified the other officers of the firearm and assisted Deputy Cline with handcuffing Defendant. Upon retrieving the firearm, Officer Wemlinger "noticed there was a live unspent round inside the chamber . . . ."

Defendant stipulated he had a felony conviction with a date of 21 April 2015. On 14 June 2022, the jury returned its verdict, finding Defendant guilty of all charges

and that he had obtained habitual felon status. On 28 June 2022, the trial court sentenced Defendant to 90–120 months' imprisonment. Defendant entered an oral notice of appeal but later withdrew his appeal. Defendant thereafter petitioned for writ of certiorari, which this Court granted.

## II. Analysis

Defendant first argues the trial court committed error by failing to remove Juror Smith on its own accord or by failing to allow Defendant's counsel to strike Juror Smith. Defendant last argues he received ineffective assistance of counsel ("IAC") due to his counsel's failure to use a peremptory strike on Juror Smith. After a careful review, we hold the trial court did not commit error, and we dismiss Defendant's IAC claim without prejudice.

## A. Juror Removal

Defendant contends the trial court was obligated under N.C. Gen. Stat. § 15A-1214(g) (2023) to sua sponte excuse Juror Smith. Further, Defendant argues the trial court deprived him of the opportunity to use a peremptory strike on Juror Smith. Defendant maintains the trial court violated its statutory mandate to excuse Juror Smith and he was therefore denied his right to an impartial jury. Our review of the record leads us to disagree.

"The basic concept in jury selection is that each party to a trial has the right to present his cause to an unbiased and impartial jury." *State v. Carey*, 285 N.C. 497, 506, 206 S.E.2d 213, 220 (1974). "The trial judge has broad discretion to see that a

competent, fair and impartial jury is impaneled and rulings of the trial judge in this regard will not be reversed absent a showing of abuse of discretion." *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980) (cleaned up).

Our statutes articulate the procedure for inquiring into a juror's fitness before the jury is impaneled:

> If at any time after a juror has been accepted by a party, and before the jury is impaneled, it is discovered that the juror has made an incorrect statement during voir dire or that some other *good reason* exists:
>
> (1) The judge *may* examine, or permit counsel to examine, the juror to determine whether there is a basis for challenge for cause.
>
> (2) *If* the judge determines there is a basis for challenge for cause, he must excuse the juror or sustain any challenge for cause that has been made.
>
> (3) *If* the judge determines there is no basis for challenge for cause, any party who has *not exhausted his peremptory challenges* may challenge the juror.
>
> Any replacement juror called is subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror.

N.C. Gen. Stat § 15A-1214(g) (2023) (emphasis added).

In *State v. Boggess*, the North Carolina Supreme Court explained:

> [A] trial judge has leeway to make an initial inquiry when allegations are received before a jury has been impaneled that would, if true, establish grounds for reopening *voir dire* under N.C.G.S. § 15A-1214(g). As part of this initial investigation, the judge may question any involved juror and may consult with counsel out of the juror's presence. Based on information thus developed, the judge has

discretion to reopen voir dire or take other steps suggested by the circumstances.

358 N.C. 676, 683, 600 S.E.2d 453, 457 (2004). When "the judge at any point allows the attorneys to question the juror directly, *voir dire* has necessarily been reopened and the procedures set out in N.C.G.S. § 15A-1214(g)(1)-(3) are triggered." *Id.* Upon reopening the examination of a juror, "the parties have an absolute right to exercise any remaining peremptory challenges to excuse such a juror." *Id.* (quoting *State v. Rogers*, 316 N.C. 203, 216, 341 S.E.2d 713, 721 (1986)). And it would constitute error if the trial judge permitted counsel to question such juror but did not thereafter allow the exercise of remaining peremptory challenges. *Id.* at 683, 600 S.E.2d 453, 457–58.

Here, the record tends to show the trial court followed the provisions of N.C. Gen. Stat. § 15A-1214(g). The trial court heard Juror Smith's concern and determined "good reason" existed under section 15A-1214(g) to make an initial inquiry. In its discretion under subsection 15A-1214(g)(1), the trial court then allowed the parties to ask additional questions—which reopened voir dire. *See Boggess*, 358 N.C. at 683, 600 S.E.2d at 457. Defendant's counsel asked a single question of Juror Smith and informed the trial court he had no other questions. Defendant's counsel did not object to Juror Smith's fitness and challenge her for cause on the record, nor did he exercise a peremptory challenge on the record at this time.[2]

---

[2] N.C. Gen. Stat. § 15A-1214(g)(3) states: "If the judge determines there is no basis for challenge for cause, any party who has not exhausted his peremptory challenges may challenge the juror."

Contrary to Defendant's argument, the record does not show that the trial court precluded Defendant's counsel from lodging a peremptory challenge on the record to preserve his right to bring forward this assignment of error. Further, Juror Smith was not excused by the trial court since it discretionarily determined there was not a basis for challenge for cause under subsection § 15A-1214(g)(2). The trial court did not fail to comply with N.C. Gen. Stat. § 15A-1214; we thus need not consider Defendant's prejudice argument.

After the jury was impaneled, Defendant's counsel objected to Juror Smith's fitness. Defendant maintains the trial court erred by not sustaining his challenge lodged after the jury was impaneled. An application of the relevant precedent compels us to disagree.

For a defendant seeking reversal on the ground that the trial court erred by refusing to allow a challenge for cause, the defendant must have:

> (1) Exhausted the peremptory challenges available to him;
>
> (2) Renewed his challenge as provided in subsection (i) of this section;[3] and
>
> (3) Had his renewal motion denied as to the juror in question.

N.C. Gen. Stat. § 15A-1214(h) (2023).

---

[3] N.C. Gen Stat. § 15A-1214(i) states: A party who has exhausted his peremptory challenges may move . . . to renew a challenge for cause previously denied if the party either: (1) Had peremptorily challenged the juror; or (2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted."

In this matter, Defendant's counsel exercised only three of the six peremptory challenges available to him under N.C. Gen. Stat. § 15A-1217(b)(1) (2023). Defendant therefore cannot seek reversal on account of the trial court's declining to sustain his challenge lodged after impanelment. *See* N.C. Gen. Stat. § 15A-1214(h)(1); *see also State v. Quick*, 329 N.C. 1, 17, 405 S.E.2d 179, 189 (1991) ("Compliance with these provisions[, N.C. Gen. Stat. §§ 15A-121(h), (i),] is a mandatory predicate to defendant's right to assert this argument on appeal."); *see also State v. Carter*, 335 N.C. 422, 428, 440 S.E.2d 268, 271 (1994) ("Failure to comply with these requirements forecloses defendant's appeal of the denial of the challenge for cause."). For this reason, Defendant's reliance on *State v. Hightower* is misplaced. 331 N.C. 636, 637, 417 S.E.2d 237, 238 (1992). In *Hightower*, our Supreme Court noted, "[t]he defendant preserved his right to bring forward this assignment of error by following the procedure of N.C.G.S. § 15A-1214(h)" since "[h]e peremptorily challenged the juror" and "then exhausted his peremptory challenges and renewed his challenge for cause to the juror, which was denied." 331 N.C. at 637, 417 S.E.2d at 238.

The trial court did not violate the provisions of N.C. Gen. Stat. § 15A-1214(g). Additionally, Defendant did not exhaust his peremptory challenges and therefore cannot seek reversal of the trial court's declination to strike Juror Smith for cause. *See* N.C. Gen. Stat. § 15A-1214(h)(1)-(3).

### B.    Ineffective Assistance of Counsel

Defendant next argues that his trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution by failing exercise a peremptory strike under subsection 15A-1214(g)(3) on Juror Smith. For the following reasons, we dismiss Defendant's IAC claim without prejudice.

"The Sixth Amendment to the United States Constitution guarantees to all defendants the right to counsel in criminal proceedings." *State v. Oglesby*, 382 N.C. 235, 242, 876 S.E.2d 249, 256 (2022). "The right to counsel necessarily encompasses 'the right to effective assistance of counsel.'" *Id.* To claim IAC, a defendant must show: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "[T]his Court reviews whether a defendant was denied effective assistance of counsel de novo." *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014). "IAC claims should only be decided on the merits in a direct appeal when 'the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.'" *State v. Gillard*, 386 N.C. 797, 867, 909 S.E.2d 226, 279 (2024) (quoting *State v. Fair*, 354 N.C. 131, 166–67, 557 S.E.2d 500 (2001)).

"The decision to exercise a peremptory challenge is necessarily a tactical one for trial counsel." *Jaynes*, 353 N.C. at 548, 549 S.E.2d at 191. "Trial counsel are free to allocate their peremptory challenges as they see fit, within constitutional boundaries, and are not required to exercise them each time a challenge for cause is denied regardless of whether they argued strenuously that grounds for a challenge for cause existed." *Id.* "Where the claim raises potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues." *State v. Santillan*, 259 N.C. App. 394, 402, 815 S.E.2d 690, 696 (2018) (cleaned up). "Particular strategic decision remains a question of fact, and is not something which can be hypothesized." *State v. Todd*, 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017) (cleaned up).

Here, the cold record does not permit us to assess Defendant's challenge of his counsel's strategy to not exercise a peremptory strike after the trial court reopened voir dire. Accordingly, Defendant's IAC claim is dismissed without prejudice as the record is insufficient to discern whether Defendant's counsel's failure to use a peremptory strike for Juror Smith was a matter of sound trial strategy or deficient performance. *See Fair*, 354 N.C. at 167, 557 S.E.2d at 525 (holding, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding."); *see also State v. Friend*, 257

N.C. App. 516, 521, 809 S.E.2d 902, 906 (2018) (citation omitted) ("Where the claim raises 'potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues.'").

### III.  Conclusion

For the reasons above, the trial court did not abuse its discretion by not excusing Juror Smith.  Defendant's IAC claim is dismissed without prejudice for him to assert the claim in trial court.

NO ERROR IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Chief Judge DILLON and Judge HAMPSON concur.