STATE OF NORTH CAROLINA v. FREDERICK DONALD CLARK

No. 127A85

(Filed 4 March 1987)

**1. Criminal Law § 86.8— impeachment of witness—details of larceny—exclusion as harmless error**

Defendant should have been permitted to cross-examine a State's witness concerning the details of a larceny for which he had been convicted to show the witness's character for untruthfulness, N.C.G.S. 8C-1, Rule 608(b). However, the exclusion of such evidence was not prejudicial error where defend-

ant was able effectively to impeach the witness through other testimony that he was a cocaine addict at the time of the murder in question and was so intoxicated by cocaine that he had to drink vodka to sleep, that he refused to help the victim after the shooting because he was running from the police, that he pleaded guilty to three larceny charges in 1976, and that he supported his $70 to $100 per day cocaine habit by playing cards, shooting dice and playing pool.

**2. Criminal Law § 89.8— concessions for testimony—exclusion not error**

The trial court did not err in sustaining the State's objections to defendant's attempts to establish that a State's witness was testifying in exchange for concessions in a pending trial in another county where there was other extensive testimony as to the concessions to defendant in the pending cases and the excluded testimony would have been merely cumulative.

**3. Criminal Law § 86.8— impeachment of witness—disposing of stolen goods—exclusion as harmless error**

The trial court erred in refusing to permit defendant to ask a State's witness on cross-examination whether he had disposed of stolen goods for a second State's witness since such testimony was relevant to the first witness's credibility. However, the exclusion of such testimony was not prejudicial error in light of other evidence about the witness's credibility, including his drug sales, his prior convictions, the terms of his current probation, and his motive to receive reward money in the present case.

**4. Constitutional Law § 30— third person's statement—denial of motion to compel disclosure**

The trial court's denial of defendant's motion to compel disclosure of a third person's statement to a police officer was not error under *Brady v. Maryland*, 373 U.S. 83, where the statement did not contain anything favorable to defendant.

**5. Jury § 6.3— question to prospective juror—reliance on circumstantial evidence—absence of eyewitnesses**

The trial court did not err in allowing the prosecutor to propound to prospective jurors a question which informed the jurors that the State would rely on circumstantial evidence and asked them whether a lack of eyewitnesses would cause them problems.

**6. Constitutional Law § 63— "death qualified" jury—constitutionality**

Defendant's constitutional rights were not violated when the trial court allowed a "death qualified" jury to pass on his guilt at the guilt-innocence phase of his first degree murder trial.

APPEAL by defendant from *Saunders, Judge*. Judgment entered 14 December 1984 in Superior Court, MECKLENBURG County. Heard in the Supreme Court 11 December 1986.

The defendant was tried for the first degree murder of Lester Norman, whose body was found in a vacant lot in Charlotte on 4 January 1984. The State presented the following evidence: Gary Crawford and James Porter testified that they saw the defendant twice on the night of 2 and 3 January at Porter's home. On the first occasion the defendant stated that he had robbed two white men at gunpoint. He showed Porter and Crawford a wallet, a watch and other jewelry he had taken from the two men. The defendant returned later that night and stated that he had committed another armed robbery against a lone male. He said he had shot at the victim but did not think he had hit him. He showed Crawford and Porter a wallet, gold chains and a wedding ring he had taken from the second victim. Inside the wallet Porter saw Lester Norman's driver's license.

During a search of the residence shared by Crawford and Ronnie Williams police discovered a chrome-colored .357 magnum, a watch and several gold chains which Crawford said he had obtained from the defendant. A gold wedding ring, identified by his sister as belonging to Lester Norman, was also traced to Crawford, who stated that he had gotten the ring from the defendant.

Darrell Givens testified that he was in the Wishbone liquor house in the early morning of 3 January 1984 when the defendant said that he had robbed and shot Lester Norman. Dr. Hobart Wood testified that Lester Norman died as a result of a gunshot wound. He testified the death could have occurred between 3:00 and 4:00 a.m. on 3 January 1984.

The defendant was convicted of first degree murder under the felony murder rule, N.C.G.S. § 14-17, and sentenced to life imprisonment. He appealed.

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1] By his first assignment of error the defendant argues that he was "denied his right to cross-examine the State's key witnesses in complete accordance with the rules of evidence." He first con-

tends that the trial court erred in denying him an opportunity to cross-examine Darrell Givens concerning the details of a larceny for which Mr. Givens was convicted.

The defendant propounded questions on cross-examination to Darrell Givens which, if he had been allowed to answer, would have shown that after Mr. Givens had left his employment with a fire extinguisher company he went to customers of the company and represented to them that he was there to inspect the fire extinguishers. When left alone he would steal money if any was in the room.

It appears that this testimony should have been admitted under N.C.G.S. § 8C-1, Rule 608(b) as probative of Givens' character for untruthfulness. *See State v. Morgan*, 315 N.C. 626, 340 S.E. 2d 84 (1986). Nevertheless, we do not believe that its exclusion was prejudicial error. Givens testified that he was currently in the custody of the North Carolina Department of Corrections pursuant to a larceny conviction, that at the time of the 3 January murder he was a cocaine addict and was so intoxicated by cocaine use that he had to drink vodka to sleep, that he refused to assist Lester Norman after the shooting because he was running from the police, that he had pleaded guilty to three larceny charges since 1976, and that he supported his $70 to $100 per day cocaine habit by playing cards, shooting dice and playing pool. The defendant was able to impeach the witness with such effectiveness through this testimony that we hold there is not "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial," as required by N.C.G.S. § 15A-1443(a). *See State v. Milby*, 302 N.C. 137, 273 S.E. 2d 716 (1981).

[2] The defendant also argues that the trial court erred in denying him an opportunity to bring out the biases and interests of Gary Crawford and James Porter on cross-examination. The trial court sustained the State's objections to the defendant's attempts to establish that Crawford was testifying in exchange for concessions in a pending trial in another county. Crawford testified that he and Ronnie Williams, who had at one time been a suspect in this case, were very close friends and that they had committed a break-in together, that he had lived at times with James Porter, a confessed drug dealer and purchaser of stolen property, and that

he had stolen Lester Norman's wedding ring from the defendant. Crawford also testified that he had been convicted but not yet sentenced for a cocaine charge and for the break-in committed with Ronnie Williams. He stated that the two cases had been consolidated for sentencing, reducing the total possible sentence he might be required to serve, and that a prayer for judgment had been entered in the cases to allow sentencing to occur after his testimony in the present case. The plea bargain in his cases also included an agreement by the State to dismiss three misdemeanor charges. Following Crawford's testimony his attorney in the breaking or entering case testified that although there was no agreement in that case involving Crawford's testimony in this case, both he and Crawford expected a lighter sentence to be imposed in return for his truthful testimony. In light of the extensive testimony as to concessions to Crawford in that case we hold that this testimony would have been merely cumulative. Its exclusion was not error.

[3] The defendant also argues that it was error not to allow him to ask James Porter on cross-examination whether he had disposed of stolen goods for Gary Crawford. He contends that this was relevant to show that Porter was biased in favor of Crawford. We agree with defendant that this testimony was relevant to Porter's credibility and should have been allowed. The defendant was allowed to explore Porter's drug sales, his prior convictions and the terms of his current probation. He also established Porter's motive to receive the reward money offered in the Lester Norman case and the fact that Crawford often socialized at Porter's house, at which he once resided. In light of this evidence about Porter's credibility we hold that there is not a reasonable possibility that the excluded testimony would have led to a different result. The defendant's first assignment of error is overruled.

[4] The appellant next assigns error to the denial of his motion to compel disclosure of exculpatory evidence in the State's possession. Prior to trial H. D. Jones, the officer in charge of investigating the case, was examined by the defendant's counsel as to whether there had been compliance with the defendant's request for disclosure. Mr. Jones testified that he had interviewed Sylvester McClure in regard to the case and that McClure had made a statement. The court examined in camera Mr. Jones'

notes of McClure's statement and sustained the State's objection to revealing this evidence. The court sealed McClure's statement, which was sent to this Court to determine whether it was error under *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215 (1963), to withhold this statement from the defendant. The Court in *Brady* held that it is a violation of a defendant's due process rights for the prosecution to withhold evidence favorable to the defendant after he has requested it.

We have examined McClure's statement as taken by Mr. Jones and it does not contain anything favorable to the defendant. This assignment of error is overruled.

[5] In his third assignment of error the defendant argues that the court erred in allowing the State to propound to several jurors a question substantially as follows:

The State will be relying in this case on what's been called circumstantial evidence. That is a type of evidence accepted by the law. There are no witnesses who can say I saw the defendant Frederick Clark shoot Lester Norman. Circumstantial evidence is proof of a chain of events or chain of facts, and that's what we will be relying on in this case. Does the fact that there are no eyewitnesses cause you any problems?

On two occasions, the court sustained the defendant's objection to this question and instructed the jury on how to consider circumstantial evidence. On several occasions no objection was made to the question. We note that not all the State's evidence was circumstantial. Darrell Givens testified that he heard the defendant say he shot and robbed Lester Norman.

The defendant argues that the question (1) is improperly argumentative, asserting to the jury that none of the State's witnesses saw the crime, (2) is improperly hypothetical, asking the jurors to assume a state of the evidence and then proffer a guess as to his or her likely reaction, (3) improperly preconditions the jurors to believe, as a matter of fact, that there are no eyewitnesses, and (4) improperly "stakes the jurors out" and provides the prosecutor an unfair insight as to how they might vote.

There have been many cases dealing with this question raised by the appellant. *See State v. Adcock*, 310 N.C. 1, 310 S.E.

2d 587 (1983); *State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981); *State v. Phillips*, 300 N.C. 678, 268 S.E. 2d 452 (1980); *State v. Denny*, 294 N.C. 294, 240 S.E. 2d 437 (1978); *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), *vacated in part, Vinson v. North Carolina*, 428 U.S. 902, 49 L.Ed. 2d 1206 (1976); *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973); *State v. Washington*, 283 N.C. 175, 195 S.E. 2d 534 (1973), *cert. denied*, 414 U.S. 1132, 38 L.Ed. 2d 757 (1974); *State v. Hedgepeth*, 66 N.C. App. 390, 310 S.E. 2d 920 (1984); *State v. Williams*, 41 N.C. App. 287, 254 S.E. 2d 649, *cert. denied*, 297 N.C. 699, 259 S.E. 2d 297 (1979); *State v. Hunt*, 37 N.C. App. 315, 246 S.E. 2d 159 (1978); *Re Will of Worrell*, 35 N.C. App. 278, 241 S.E. 2d 343, *cert. denied*, 295 N.C. 90, 244 S.E. 2d 263 (1978); and *State v. Wood*, 20 N.C. App. 267, 201 S.E. 2d 231 (1973). The rules regarding proper questions to ask prospective jurors as stated in the above cases were summarized in *Phillips* as follows:

> Counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. Counsel should not argue the case in any way while questioning the jurors. Counsel should not engage in efforts to indoctrinate, visit with or establish "rapport" with jurors. Jurors should not be asked what kind of verdict they would render under certain named circumstances.

300 N.C. at 682, 268 S.E. 2d at 455.

We hold that the question by the prosecuting attorney does not violate any of the rules enunciated in *Phillips*. It does not fish for answers to legal questions before the judge has instructed the jury. It merely informs the jurors that the State will rely on circumstantial evidence and asks them whether a lack of eyewitnesses could cause them problems. The prosecuting attorney was not arguing with the jury or attempting to establish "rapport" with them. The question was certainly not designed to ask what kind of verdict the jury would render under certain named circumstances. The question is not, as contended by the defendant, improperly argumentative. It does not incorporate within the question assumed facts. The question is not hypothetical. The State did rely to a great degree on circumstantial evidence. It does not improperly "precondition" the jurors to believe there

were no eyewitnesses. No eyewitness testified. This assignment of error is overruled.

[6] Finally, the defendant argues that his constitutional rights were violated when the trial court allowed a "death qualified" jury to pass on his guilt in the guilt or innocence phase of the trial. We considered and rejected this argument in *State v. Ladd,* 308 N.C. 272, 302 S.E. 2d 164 (1983). The United States Supreme Court recently reached the same conclusion in *Lockhart v. McCree,* 476 U.S. ---, 90 L.Ed. 2d 137 (1986). We decline to reconsider the issue here.

In the trial we find

No error.