STATE OF NORTH CAROLINA v. JOSHUA ORTEL HATFIELD

No. COA97-183

(Filed 6 January 1998)

**1. Jury § 120 (NCI4th)— sexual offenses against child—jury selection—whether jurors thought child abuse victims credible—not allowed—no prejudicial error**

There was no prejudicial error in a prosecution for first-degree sexual offenses and taking indecent liberties where defendant was not allowed to ask prospective jurors if they thought that children were more likely to tell the truth when they made allegations of abuse. The question did not fish for an answer to a legal question before the judge had instructed on applicable legal principles, the question was not an attempt to establish a rapport with prospective jurors, it did not ask prospective jurors what kind of a verdict they would render under certain circumstances, and it did not incorporate assumed facts and was not a hypothetical. It simply informed jurors that

the State would offer a child's testimony and sought to ensure that their impartiality would not be swayed. The question was allowable as a proper inquiry into the jurors' sympathies toward a molested child and the court erred by not allowing it; however, defendant's argument that he was prejudiced amounts to little more than speculation and conjecture.

**2. Criminal Law § 741 (NCI4th Rev.)— child sexual abuse— instructions—reference to child as victim**

There was no plain error in a prosecution for first-degree sexual offenses and taking indecent liberties where the court referred to the prosecuting witness as a victim fifteen times during the jury charge.

**3. Indictment, Information, and Criminal Pleadings § 29 (NCI4th)— sexual offenses against child—dates—sufficiently alleged**

The trial court did not err in a prosecution for first-degree sexual offenses and taking indecent liberties by denying defendant's motion to dismiss the indictments. Although defendant wanted to present an alibi defense and argued that the indictments were impermissibly vague about the dates of the offenses, it has been held that an indictment is sufficient if it sets out a time period during which the crime allegedly occurred and that a witness's vagueness as to the date of the offense does not necessarily render an indictment fatally defective.

Appeal by defendant from judgment and commitment entered 24 June 1996 by the Honorable Claude S. Sitton in Graham County Superior Court. Heard in the Court of Appeals 28 October 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Kay Linn Miller Hobart, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

WYNN, Judge.

Joshua Ortel Hatfield was convicted on 24 June 1996 for three counts of first-degree sexual offense and one count of taking indecent liberties with his minor stepdaughter.

STATE v. HATFIELD

[128 N.C. App. 294 (1998)]

At Hatfield's trial, the minor female testified for the State about several incidents in 1992, when she was nine years old, during which Hatfield fondled and penetrated her. Also testifying for the State was social worker Buddy Morris, who stated that the minor female talked to him and revealed that Hatfield had abused her. She initially told him that the abuse began in 1994, but later said that it started in 1992.

Richard Phillips, a friend of the stepdaughter, testified that in 1995 he saw her crying and when he asked what was wrong she told him that Hatfield had put his penis in her mouth three years earlier. Detective Rocky Sampson testified that he interviewed the step-daughter in 1995, but was unable to ascertain exact dates of the alleged incidents.

## I.

[1] Hatfield first argues that the trial court committed reversible error by not allowing him to ask prospective jurors if they thought that children were more likely to tell the truth when they made allegations of sexual abuse.

In *State v. Phillips*, our Supreme Court summarized the rules guiding questioning of prospective jurors during *voir dire*:

> Counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. Counsel should not argue the case in any way while questioning the jurors. Counsel should not engage in efforts to indoctrinate, visit with or establish 'rapport' with jurors. Jurors should not be asked what kind of verdict they would render under certain named circumstances.

300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980).

In *State v. Clark*, 319 N.C. 215, 353 S.E.2d 205 (1987), the prosecutor pointed out during *voir dire* that the State's case was circumstantial and asked the potential jurors: "Does the fact that there are no eyewitnesses cause you any problems?" *Id.* at 220, 353 S.E.2d at 207. The defendant raised several objections to this question, but our Supreme Court found no error. *Id.* at 220-22, 353 S.E.2d at 207-08. The Court recited the language quoted *supra* from *Phillips*, and then stated:

> We hold that the question by the prosecuting attorney does not violate any of the rules enunciated in *Phillips*. It does not fish for answers to legal questions before the judge has instructed the

jury. It merely informs the jurors that the State will rely on circumstantial evidence and asks them whether a lack of eyewitnesses could cause them problems. The prosecuting attorney was not arguing with the jury or attempting to establish 'rapport' with them. The question was certainly not designed to ask what kind of verdict the jury would render under certain named circumstances. The question is not, as contended by the defendant, improperly argumentative. It does not incorporate within the question assumed facts. The question is not hypothetical. The State did rely to a great degree on circumstantial evidence. It does not improperly 'precondition' the jurors to believe there were no eyewitnesses. No eyewitness testified.

*Id.* at 221-22, 353 S.E.2d at 208.

In *State v. McKoy,* 323 N.C. 1, 372 S.E.2d 12 (1988), *sentence vacated,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990), the prosecutor asked several prospective jurors whether they would be sympathetic toward a defendant who was intoxicated at the time of the offense. *Id.* at 13-14, 372 S.E.2d at 18-19. Our Supreme Court stated:

The questions here were properly allowed as an inquiry into the jurors' sympathies toward an intoxicated person. They did not contain incorrect or inadequate statements of law, nor were they ambiguous or confusing. Moreover, they did not tend to 'stake out' the jurors as to their potential verdict or how they would vote under a given state of facts. The questions did not 'fish for answers to legal questions before the judge ha[d] instructed the jury.'

*Id.* at 15, 372 S.E.2d at 19 (citation omitted) (alteration in original).

In this case, asking a prospective juror whether he or she would think that children were more likely to tell the truth when they made allegations of sexual abuse was a proper inquiry into the jurors' sympathies. The question did not fish for an answer to a legal question before the judge had instructed on applicable legal principles. Furthermore, the question was not an attempt to establish a "rapport" with the prospective jurors, nor did it ask the prospective jurors what kind of verdict they would render under certain circumstances. Additionally, the question was not an argument—it did not incorporate assumed facts and was not a hypothetical. Rather, it simply informed the jurors that the State would offer a child's testimony and sought to ensure that their impartiality would not be swayed. The

State did in fact rely to a great degree on the testimony of a sexually abused child. In sum, the question was allowable as a proper inquiry into the jurors' sympathies toward a molested child, and as such is indistinguishable from the question our Supreme Court found permissible in *McKoy*. Accordingly, we hold that the trial court erred by not allowing Hatfield to ask it.

We next consider whether the error was prejudicial. Regulation of *voir dire* inquiries is within the trial court's discretion, *State v. Avery*, 315 N.C. 1, 20, 337 S.E.2d 786, 796-97 (1985), and its decisions will not be overturned absent an abuse of discretion, *State v. Mash*, 328 N.C. 61, 63-64, 399 S.E.2d 307, 309 (1991).

Hatfield argues that the trial court's action denied him a fundamentally fair trial. He cites *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 258 (1976) for the proposition that a new trial is required where a trial court's restriction on jury selection denies the defendant a fundamentally fair trial. He points out that the stepdaughter's testimony and previous statements were the only evidence implicating him. As a result, the stepdaughter's credibility was pivotal and if the jurors believed that children do not make false claims of abuse, then they would have impermissibly discounted evidence about the stepdaughter's dislike of Hatfield and the lapse of time between the incidents and her reporting them. He therefore contends that under *Ristiano v. Ross*, 424 U.S. 589, 47 L. Ed. 2d 258 (1976), because the trial court refused questioning in an area where the jury was likely to have biases, he has been denied a fundamentally fair trial as a matter of law.

We are not persuaded that Hatfield was prejudiced. *Morgan* was concerned with whether a trial court could "refuse inquiry into whether a potential juror would automatically impose the death penalty upon conviction of the defendant." *Id.* at 721, 119 L. E. 2d at 497. The question in the present case is obviously distinguishable from *Morgan* because it related to potential bias, not to an automatic death sentence imposition.

Furthermore, we note that the Court in *Ristaino* said that "[t]he Constitution does not always entitle a defendant to have questions posed during voir dire specifically directed to matters that conceivably might prejudice veniremen against him. . . . The State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant." *Id.* at 594-95, 47 L. E. 2d at 263 (footnote omitted).

In this case, Hatfield's argument that he was prejudiced amounts to little more than speculation and conjecture. We are not persuaded that he was prejudiced, and accordingly we hold that no reversible error occurred when the trial court denied him the opportunity to ask the question.

## II.

[2] Hatfield next argues that the trial court committed reversible error by referring to the prosecuting witness as a "victim" fifteen times during the jury charge. However, even though given a specific opportunity to do so, Hatfield's lawyer did not object to the use of the term at trial and our review is limited to plain error. Although we note his arguments to the contrary, we have previously held that a trial court did not commit plain error by referring to the prosecuting witness as a victim. *State v. Richardson*, 112 N.C. App. 58, 67, 434 S.E.2d 657, 663 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 132 (1994). Accordingly, we hold that no reversible error occurred.

## III.

[3] Hatfield finally argues that the trial court erred by denying his motion to dismiss the indictments. Hatfield contends that the indictments against him were impermissibly vague because they alleged that the criminal acts occurred on or about dates in August 1992. Hatfield wanted to present an alibi defense, and in order to do so he was forced to attempt to explain where he was during the entire summer. However, as he concedes in his brief, we have previously held that an indictment is sufficient if it sets out a time period during which the crime allegedly occurred. *State v. Oliver*, 85 N.C. App. 1, 7-8, 354 S.E.2d 527, 531, *disc. review denied*, 320 N.C. 174, 358 S.E.2d 64 (1987) (discussing N.C. Gen. Stat. § 15A-924(a)(4), which sets out the requirements for a criminal pleading). Further, a witness's vagueness as to the date of an offense does not necessarily render an indictment fatally defective. *See State v. Ramey*, 318 N.C. 457, 472, 349 S.E.2d 566, 575-76 (1986). Accordingly, we hold that the trial court did not err by denying Hatfield's motion to dismiss.

Thus, in the trial of Joshua Ortel Hatfield, we find,

No prejudicial error.

Judges EAGLES and MARTIN, Mark D., concur.