Joshua Ortel HATFIELD, Petitioner,

v.

Robert SMITH, Superintendent, and the State of North Carolina, Respondents.

No. Civ.2:99CV196.

United States District Court,
W.D. North Carolina,
Bryson City Division.

Aug. 11, 2000.

J. Phillip Griffin, Jr., N.C. Prisoner Legal Services, Inc., Raleigh, NC, for Joshua Ortel Hatfield, petitioner.

Clarence J. DelForge, III, Fed Habeas Section, NC Dept of Justice, Raleigh, NC, for Robert Smith, Superintendent, respondents.

### *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

THIS MATTER is before the Court on the Petitioner's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Respondent has filed both a motion for summary judgment and a response to the petition. Petitioner has also moved for summary judgment. Both parties have submitted portions of the record for review as well as legal briefs. The undersigned concludes the record is adequate and finds an evidentiary hearing is unnecessary. Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the reasons stated herein, the petition is denied.

### I. PROCEDURAL AND FACTUAL HISTORY

Petitioner was convicted by jury verdict in June 1996 of three counts of first-degree sexual abuse and one count of taking indecent liberties with his minor stepdaughter. *State v. Hatfield,* 128 N.C.App. 294, 495 S.E.2d 163, *rev. denied,* 348 N.C. 75, 505 S.E.2d 881, *cert. denied,* 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998). The trial court sentenced him to two consecutive life terms of imprisonment. "At Hatfield's trial, the minor female testified for the State about several incidents in 1992, when she was nine years old, during which Hatfield fondled and penetrated her. . . .

Richard Phillips, a friend of the step-daughter, testified that ... he saw her crying and when he asked what was wrong she told him that Hatfield had put his penis in her mouth...."[1] *Id.,* at 296, 495 S.E.2d at 164 (footnote added).

On appeal, Hatfield argued the trial court committed reversible error by refusing to allow defense counsel to ask the following question of prospective jurors during *voir dire:* "Do you believe children are more likely to be telling the truth because acts are of a sexual nature?" The North Carolina Court of Appeals held, "In sum, the question was allowable as a proper inquiry into the jurors' sympathies toward a molested child, and as such is indistinguishable from the question our Supreme Court found permissible in *McKoy* [*State v. McKoy,* 323 N.C. 1, 372 S.E.2d 12 (1988), *vacated,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) ].[2] Accordingly, we hold that the trial court erred by not allowing Hatfield to ask it." *Id.,* at 298, 495 S.E.2d at 165 (footnote added). However, the Court of Appeals found that the error was not prejudicial.

The North Carolina Supreme Court denied review and the United States Supreme Court denied the Petitioner's petition for a writ of *certiorari.* The parties agree Petitioner exhausted state remedies by raising the issue of *voir dire* on direct appeal to the North Carolina state courts. Thus, it was unnecessary for Petitioner to seek state post-conviction collateral review.

## II. STANDARD OF REVIEW

Section 2254 provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The Supreme Court has recently interpreted this language.

[Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.... Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* —— U.S. ——, ——, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring).

## III. DISCUSSION

The North Carolina Court of Appeals acknowledged that the trial court committed error by refusing to allow *voir dire* of prospective jurors concerning the credibility of child witnesses on issues relating to

---

1. The Court of Appeals decision recites Phillips as testifying that the child victim told him about the abuse in 1995. However, the trial transcript shows that Phillips actually testified that the child confided in him in the summer of 1992, shortly after the abuse occurred. Trial Transcript, at 86.

2. In *McKoy* the prosecutor inquired of prospective jurors whether they would be sympathetic to a defendant who was intoxicated at the time of the offense.

sexual abuse. However, it concluded the error was not prejudicial and stated its reasoning as follows:

> Hatfield argues that the trial court's action denied him a fundamentally fair trial. He cites *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492[ ] (1992) for the proposition that a new trial is required where a trial court's restriction on jury selection denies the defendant a fundamentally fair trial. He points out that the stepdaughter's testimony and previous statements were the only evidence implicating him. As a result, the stepdaughter's credibility was pivotal and if the jurors believed that children do not make false claims of abuse, then they would have impermissibly discounted evidence about the stepdaughter's dislike of Hatfield and the lapse of time between the incidents and her reporting them. He therefore contends that under *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258[ ] (1976), because the trial court refused questioning in an area where the jury was likely to have biases, he has been denied a fundamentally fair trial as a matter of law. We are not persuaded that Hatfield was prejudiced. *Morgan* was concerned with whether a trial court could "refuse inquiry into whether a potential juror would automatically impose the death penalty upon conviction of the defendant." The question in the present case is obviously distinguishable from *Morgan* because it related to potential bias, not to an automatic death sentence imposition. Furthermore, we note that the Court in *Ristaino* said that "[t]he Constitution does not always entitle a defendant to have questions posed during voir dire specifically directed to matters that conceivably might prejudice veniremen against him.... The State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant." In this case, Hatfield's argument that he was prejudiced amounts to little more than speculation and conjecture. We are not persuaded that he was prejudiced, and accordingly we hold that no reversible error occurred when the trial court denied him the opportunity the ask the question.

*Hatfield,* 128 N.C.App. at 298–99, 495 S.E.2d at 165 (quoting *Morgan,* 504 U.S. at 721, 112 S.Ct. 2222, and *Ristaino,* 424 U.S. at 594–95, 96 S.Ct. 1017). Thus, on habeas review, the issue is whether the state court's determination as a matter of law that the Petitioner did not receive a fundamentally unfair trial is "a conclusion opposite to that reached by [the Supreme] Court or [is a decision] different[ ] than [the Supreme] Court has [decided] on a set of materially indistinguishable facts." *Williams, supra.*

The Supreme Court has noted that its review of cases involving the requirements of *voir dire* differs depending on whether the case was tried in federal or state court. Those cases tried in federal court are subject "to this Court's supervisory power" which means that the Court "enjoy[s] more latitude in setting standards for *voir dire.*" *Mu'Min v. Virginia,* 500 U.S. 415, 422, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). As to cases tried in state court, like the case at hand, the Court's "authority is limited to enforcing the commands of the United States Constitution." *Id.,* at 422, 111 S.Ct. 1899. Nonetheless, the Court has ruled that

> two parallel themes emerge from both sets of cases: First, the possibility of racial prejudice against a black defendant charged with a violent crime against a white person is sufficiently real that the Fourteenth Amendment requires that inquiry be made into racial prejudice; second, the trial court retains great latitude in deciding what questions should be asked on *voir dire.... To be constitutionally compelled ... the trial court's failure to ask [certain] questions must render the defendant's trial fundamentally unfair.*

*Id.,* at 424–26, 111 S.Ct. 1899 (emphasis added). Petitioner would have the Court equate a defendant charged with sex abuse to a defendant facing the death penalty for a inter-racial crime. Supreme Court precedent does not support such an extension.

In *Mu'Min,* the defendant was convicted of murder and sentenced to death. The *voir dire* issue involved pretrial publicity and the extent to which potential jurors had read or heard about the case. The defendant claimed the trial court erred in refusing his request to ask prospective jurors about the contents of any news reports to which they had been exposed. The Supreme Court held the subject of possible bias from pretrial publicity was covered by the trial court and the Due Process Clause of the Fourteenth Amendment does not require questioning about the contents thereof. The facts of Petitioner's case most closely resemble those in *Mu'Min;* both cases involve requests for specific questioning tailored to the facts thereof.

■ In *Ristaino v. Ross, supra,* the Court reviewed the conviction of a black defendant for violent crimes against a white victim. The trial court there rejected the defendant's request for an inquiry into racial prejudice and the Court, on habeas review, noted that the

> Constitution does not always entitle a defendant to have questions posed during *voir dire* specifically directed to matters that conceivably might prejudice veniremen against him. *Voir dire* "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." This is so because the "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." Thus, the State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant.

*Id.,* 424 U.S. at 594–95, 96 S.Ct. 1017 (quoting *Connors v. United States,* 158 U.S. 408, 413, 15 S.Ct. 951, 39 L.Ed. 1033 (1895) and *Rideau v. Louisiana,* 373 U.S. 723, 733, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (Clark, J., dissenting)) (footnote omitted). Ten years later, the Court reiterated *Ristaino* but found that when a defendant is sentenced to death, the stakes are enlarged, and thus the constitutional rights proportionately, and a defendant is entitled to inquire into racial prejudice during *voir dire. Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). Nonetheless, the Court left standing the defendant's conviction for murder and vacated only the death sentence.

> The inadequacy of *voir dire* in this case requires that petitioner's death sentence be vacated. It is not necessary, however, that he be retried on the issue of guilt. Our judgment in this case is that there was an unacceptable risk of racial prejudice infecting the *capital sentencing proceeding.* This judgment is based on a conjunction of three factors: the fact that the crime charged involved interracial violence, the broad discretion given the jury at the death-penalty hearing, and the special seriousness of the risk of improper sentencing in a capital case. *At the guilt phase of petitioner's trial, the jury had no greater discretion than it would have had if the crime charged had been noncapital murder. Thus, with respect to the guilt phase of petitioner's trial, we find this case to be indistinguishable from Ristaino, to which we continue to adhere.*

Id., at 37–38, 106 S.Ct. 1683 (emphasis added). The undersigned concludes, in accord with the Supreme Court precedent, that the state courts were correct in ruling the Petitioner had not received a fundamentally unfair trial as a result of the exclusion of the question during *voir dire.* Indeed, even in cases arising from federal court, as to which the Court has held it has the ability to exact more stringent standards, precedent does not extend the right to *voir dire* to the extent sought by Peti-

tioner. In *Rosales–Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981), a Mexican defendant sought to ask prospective jurors during *voir dire* whether his Mexican descent would affect their evaluation of the case. The trial court refused his request, finding that general questions concerning impartiality were sufficient. The Supreme Court affirmed that ruling.

> In our judgment, it is usually best to allow the defendant to resolve this conflict by making the determination of whether or not he would prefer to have the inquiry into racial or ethnic prejudice pursued.... There may be [ ] circumstances [other than race] that suggest the need for such an inquiry, *but the decision as to whether the total circumstances suggest a reasonable possibility that racial or ethnic prejudice will affect the jury remains primarily with the trial court, subject to case-by-case review by the appellate courts.*

*Id.,* at 191–92, 101 S.Ct. 1629 (emphasis added).

Petitioner cites *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), in support of his position. However, that case turned on its facts and the Supreme Court has so held. *Ristaino,* 424 U.S. at 595, 96 S.Ct. 1017.

> In *Ham,* however, we recognized that some cases may present circumstances in which an impermissible threat to the fair trial guaranteed by due process is posed by a trial court's refusal to question prospective jurors specifically about racial prejudice during *voir dire. Ham* involved a Negro tried in South Carolina courts for possession of marihuana. He was well known in the locale of his trial as a civil rights activist, and his defense was that law enforcement officials had framed him on the narcotics charge to "get him" for those activities. Despite the circumstances the trial judge denied Ham's request that the court-conducted *voir dire* include questions specifically directed to racial prejudice. We re-

versed the judgment of conviction because "the essential fairness required by the Due Process Clause of the Fourteenth Amendment requires that under the facts shown by this record the [defendant] be permitted to have the jurors interrogated [during *voir dire* ] on the issue of racial bias." *By its terms Ham did not announce a requirement of universal applicability. Rather, it reflected an assessment of whether under all of the circumstances presented there was a constitutionally significant likelihood that, absent questioning about racial prejudice, the jurors would not be as "indifferent as [they stand] unsworn."*

*Id.,* at 595–96, 96 S.Ct. 1017 (quoting *Ham,* 409 U.S. at 527, 93 S.Ct. 848) (emphasis added) (footnotes omitted).

The same concern is not warranted in this case. Petitioner's theory of defense was not that he had been "set up" by the child victim. The abuse was alleged to have occurred in July and August of 1992. About a month and a half thereafter, the child revealed the abuse to her brother's friend with a caveat not to repeat the allegations due to her fear of the Petitioner. Trial Transcript, at 86. In 1995, the child's mother reported behavior problems to school authorities who at first believed the child was acting out because she did not like or was jealous of her mother's new boyfriend. *Id.,* at 58–60. According to the social worker assigned to the child, this raised "red flags" because they thought the boyfriend might be abusing the child. *Id.,* at 60. When he asked if the boyfriend had touched her in any way, she said no but began crying. *Id.* He knew then that someone had abused the child and during further questioning, she identified the Petitioner as the abuser. *Id.* Thus, contrary to the Petitioner's position that the child disliked him and thus lied about the abuse, she did not reveal it until three years after he had left the household. Indeed, the child testified that after three years of keeping the secret, she considered running away because "[i]t had built up inside, and

I just felt like I could run away from it." *Id.*, at 29.

Moreover, during the preliminary and concluding instructions, the trial judge charged the jury that they alone were the judges of the credibility of witnesses. During the final charge, the judge stated:

You, members of the jury, are the sole judges of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none of what a witness has said on the stand. In determining whether to believe any witness, you should apply the same tests of truthfulness that you apply to your everyday affairs. As applied to this trial these tests may include the opportunity of the witness to see, hear, know or remember the facts or occurrences about which the witness testified; the manner and appearance of the witness; any interest, bias or prejudice the witness may have; the apparent understanding and fairness of the witness; whether the witness' testimony is reasonable and whether witness' testimony is consistent with other believable evidence in the case. You, members of the jury, are the sole judges of the weight to be given any evidence. By this I mean if you decide that certain evidence is believable, you must then determine the importance of that evidence in light of all other believable evidence in each case.

*Id.*, at 134. The judge also instructed on inconsistent statements. *Id.*, at 135. Thus, these instructions also insured that the Petitioner received a fundamentally fair trial. *Rosales–Lopez*, 451 U.S. at 193, 101 S.Ct. 1629.

This conclusion is also supported by Fourth Circuit precedent which has interpreted Supreme Court precedent. In *United States v. Lancaster*, 96 F.3d 734 (4th Cir.1996), *cert. denied*, 519 U.S. 1120, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997), the Circuit overruled its prior determination that it was error to refuse a request to ask prospective jurors whether they would give special credence to the testimony of law enforcement officers.

[T]he Supreme Court has declined to dictate the subject matter of *voir dire* questions in all but the most limited of circumstances. The Court generally has refrained from dictating the form of *voir dire* questions. Part and parcel of deference to the trial court's conduct of *voir dire* is a reluctance to second-guess the court's decision to refuse inquiry into certain matters. As the *Ristaino* Court explained, ... "the obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant." ... In the context of cases like this one, in which the proposed *voir dire* question does not address issues of racial or ethnic prejudice, circuit courts of appeals have held that the district court need not pursue a specific line of questioning on *voir dire*, provided the *voir dire* as a whole is reasonably sufficient to uncover bias or partiality in the venire.... If the district court must, on pain of reversal, ask the venire whether they would give heightened credibility to the testimony of a police officer when the Government's case depends on law enforcement testimony, logic compels that a similar question be asked whenever the Government's case depends on the testimony of any identifiable class of witnesses that might conceivably be thought by jurors to be inherently credible, be they firefighters, priests, physicians, attorneys, butchers, bakers or candlestick makers.... There are many means by which an impartial jury may be impaneled and we decline to straightjacket the district court's discretion.[3]

---

**3.** No issue is raised in this case as to the sufficiency of the trial court's *voir dire* in general. The only issue involves the refusal to permit this one question. Indeed, neither party submitted a transcript of the jury selection proceedings.

*Id.*, at 739–42 (quoting *Ristaino,* 424 U.S. at 594–95, 96 S.Ct. 1017) (footnote added); *accord, United States v. Barber,* 80 F.3d 964 (4th Cir.1996) (No error where trial court refused request to inquire of jurors whether they harbored prejudice against interracial couples where defendants were such a couple.).

▆ "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams,* —— U.S. at ——, 120 S.Ct. at 1519. Such is not the case here. Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.,* at 1522 (emphasis added). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 1523. It would thus appear that if the application of federal law is correct, it is not unreasonable. The undersigned concludes that under either condition, the Petitioner here is not entitled to habeas relief.

▆ Petitioner next argues that the North Carolina Court of Appeals erred by applying a harmless error analysis to the trial court's erroneous ruling. However, the state appellate court ruled that although error had occurred under state precedent, no federal constitutional rights had been violated; thus, no analysis thereof was required. Petitioner's argument is based on the scenario where such a violation has been found. "Unless the defendant's custodial status exists by reason of a violation of the federal constitution or laws or treaties, federal courts must yield to the state judicial process." *Cooper v. Taylor,* 103 F.3d 366, 370 (4th Cir.1996), *cert. denied,* 522 U.S. 824, 118 S.Ct. 83, 139 L.Ed.2d 40 (1997). Moreover, "[t]hese principles of federalism, comity, and finality apply regardless of the harmless error

standard used by the state court." *Sherman v. Smith,* 89 F.3d 1134, 1141 (4th Cir.1996), *cert. denied,* 519 U.S. 1091, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997). "Moreover, it is unwise to make our harmless error standard turn on a characterization of the state court's standard of review. Hinging a habeas court's standard on such an inquiry will inevitably lead to litigation over what methodology of review the state court applied. This in itself is intrusive." *Id.*

▆ Moreover, the standard for determining whether a conviction must be set aside because of federal constitutional error on a petition for habeas relief is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Thus, assuming *arguendo* and for purposes of finality that a federal constitutional error occurred, the issue for this Court is whether that error "'had substantial and injurious effect or influence in determining the jury's verdict;'" which means the error "'affected the verdict.'" *Cooper,* 103 F.3d at 370 (quoting *Brecht* ). This determination is made by the habeas court based on its review of the record. *Id.* "[I]f the federal court is 'in grave doubt' about whether the trial error had a 'substantial and injurious effect or influence' on the verdict and therefore finds itself 'in virtual equipoise' about the issue, the error is not harmless." *Id.* (quoting *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995)). Such is not the case at hand. The Supreme Court has held that an improper restriction on a defendant's right to cross-examine witnesses for bias was subject to a harmless error analysis and reversed the state court which had vacated the defendant's sentence as a result of the error. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The Fourth Circuit has held that a juror's prior service at the trial of a co-defendant did not show bias sufficient to warrant a

new trial. *United States v. Malloy,* 758 F.2d 979, 982–83 (4th Cir.1985). And, as discussed *infra,* the evidence against the Petitioner was more than sufficient versus one defense witness who testified that Petitioner usually worked six days a week during the time period at issue. *Cooper,* 103 F.3d at 370 ("[T]he record of evidence made in this case is totally one-sided. . . ."). Having "set aside any state trial court's constitutional error as harmless, our task ends. We then must yield to the state judicial system which convicted [Petitioner] . . . and sentenced him to life in prison." *Id.,* at 372.

■ Finally, Petitioner argues that his habeas claim is not barred by the doctrines announced in *Teague v. Lane,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989). However, Petitioner's position is that in every sex abuse trial the defendant must be allowed as a matter of constitutional law to *voir dire* prospective jurors as to whether they believe children are more likely to tell the truth when abuse is at issue. This would be required only by the adoption of a new constitutional rule of law and thus, the claim is *Teague* barred. *Barnabei v. Angelone,* 214 F.3d 463, 472 (4th Cir.2000).

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's petition for a writ of *habeas corpus* is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the parties' motions for summary judgment are hereby **DENIED** as moot.

A Judgment dismissing the petition is filed herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Petitioner's petition pursuant to 28 U.S.C. § 2254 is **DENIED,** and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.