STATE OF NORTH CAROLINA v. JERRY LATHAM CARRIGAN, Defendant

No. COA02-1577

(Filed 18 November 2003)

## 1. Evidence— hearsay—residual exception—notice

The trial court did not err in a first-degree rape, first-degree sexual offense, taking indecent liberties with a child, incest, and crime against nature case by denying defendant's motion to introduce the out-of-court statements of the minor victim's now deceased cousin, because: (1) defendant did not give proper notice of its intention to offer the hearsay testimony when the State had no notification of defendant's intent to use the statements of the deceased declarant and the prosecution had no reason to prepare to rebut the statements; and (2) even if defendant had given proper notice, the testimony of the witnesses concerning the cousin's statements lacked sufficient guarantees of trustworthiness. N.C.G.S. § 8C-1, Rules 803(24), 804(b)(5).

## 2. Criminal Law— instructions—referring to minor child as victim

The trial court did not commit plain error in a first-degree rape, first-degree sexual offense, taking indecent liberties with a child, incest, and crime against nature case by referring to the minor child as the "victim" forty times in its jury charge, because: (1) North Carolina trial courts have found that the use of the word "victim" in jury instructions does not rise to the level of plain error; (2) the word "victim" is used in North Carolina pattern jury instructions for first-degree rape and first-degree sexual offense charges; and (3) in view of the evidence in this case, it cannot be said that the outcome of defendant's trial would have been any different had the word "victim" not been used in the trial court's instructions.

**3. Sexual Offenses— first-degree—failure to require unanimous verdict for specific sexual act**

The trial court did not commit plain error by failing to require a unanimous verdict regarding the specific sexual act it found as the predicate act for the verdict of guilty of first-degree sexual offense because N.C.G.S. § 14-27.4(a)(1) does not require all twelve jurors to agree as to which act defendant committed, but rather that he committed a sexual act.

**4. Criminal Law— motion for mistrial—failure to show substantial and irreparable prejudice**

The trial court did not abuse its discretion in a first-degree rape, first-degree sexual offense, taking indecent liberties with a child, incest, and crime against nature case by denying defendant's motion for a mistrial, nor did it commit plain error by failing to inquire of the jury if it could ignore improperly admitted evidence from the minor victim stating during direct examination that a family member now knew it was true about what happened to a person named Kathy, because: (1) defendant's objection to the statement was sustained and the trial court instructed the jury not to consider the remark; (2) there was no testimony as to Kathy's identity nor any indication given as to what had happened to her; and (3) the record does not disclose that the isolated testimony substantially and irreparably prejudiced defendant.

Appeal by defendant from judgment entered 30 November 2001 by Judge W. Robert Bell in Cleveland County Superior Court. Heard in the Court of Appeals 17 September 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Diane G. Miller, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant.*

MARTIN, Judge.

Defendant appeals from a judgment ordering his imprisonment for a minimum term of 240 months and a maximum term of 297 months. The judgment was entered upon his conviction by a jury of first degree rape, first degree sexual offense, taking indecent liberties with a child, incest, and crime against nature.

The State's evidence at trial tended to show that on 22 January 2000, eleven-year-old A.L., and her nine-year-old sister, C.L., went to

STATE v. CARRIGAN

[161 N.C. App. 256 (2003)]

the home of defendant, their maternal grandfather, to spend the weekend. After spending Saturday night at defendant's home, defendant took the girls to the home of his mother, Evelyn Smith ("Smith") on Sunday, 23 January 2000. When they arrived, their cousins, Joannie Appleman and Melissa Appleman Wease, were already there.

A.L. testified that about 8:00 or 9:00 on Sunday evening, defendant took A.L. to the grocery store to buy spaghetti for dinner. Some time later, he asked A.L. to accompany him to the store again but took her, instead, to his house. A.L. went inside and was watching television when defendant called her to his bedroom and asked her to try on a pair of red panties. When she refused, he grabbed her, threw her on the bed, forced some white pills down her throat and twisted a sheet around her neck. When A.L. resisted, defendant tightened the sheet so that she was unable to resist or scream. According to A.L.'s testimony, defendant pulled down her pants, forced her legs apart and inserted his fingers into her vagina before inserting his penis. A.L. testified that it felt like he was ripping her apart. Next, defendant got beside her on the bed, forced her mouth open and put his penis into her mouth so deep that she blacked out. When she woke up, she was partially clothed on defendant's bed, with the sheet still around her neck. When she stood up to get dressed, she felt dizzy and sore. On the way back to Smith's, defendant told A.L. that if she told anyone, he would hurt her family.

After arriving back at Smith's house, A.L. went into the bathroom and found blood on her panties. She told C.L., Joannie and Melissa that defendant had raped her. Melissa and Joannie told Diane, defendant's wife, who checked A.L. and told her she looked fine. A.L. called her mother, Tammy Lewis, ("Lewis") about 3:00 a.m. Monday morning, but because defendant was standing nearby, A.L. told her mother only that she was sick and wanted to come home. Defendant then spoke with Lewis and told her A.L. would be fine by the morning. After defendant hung up, he and Smith unplugged and hid the telephone.

The next morning, C.L. found the telephone, called her mother, asked her to come get them, and told her that defendant had raped A.L. When Mrs. Lewis arrived, A.L. was sitting in the living room and needed help to walk out to the van. They went directly to the emergency room at Gaston Memorial Hospital.

At the hospital, A.L. was examined and interviewed by doctors, nurses and policemen. She had clusters of small red areas around her

neck consistent with where she described defendant had choked her with the sheet. In addition, there were scratches and bruises on the front of her neck. A toxicology test showed the presence of two drugs, a barbiturate and benzodiazepine, a sedating drug. The gynecological exam revealed abrasions on both sides of her labia minora and a small laceration of the posterior fourchette, the area around the vagina. There were additional lacerations on her hymenal ring and bruising on her external genitalia. These injuries, which appeared to be eighteen to twenty hours old, were consistent with A.L.'s account of the events, but could also have been caused by a straddle injury.

Defendant presented evidence tending to show that Lewis had given A.L. some pills for stomach problems before she went to defendant's house. On the night in question, A.L., C.L., and their cousins were playing on the bed in their bedroom when the bed collapsed. Smith called her son-in-law, Frank Appleman, who came and fixed the bed.

---

Defendant brings forward in his brief five of the fourteen assignments of error contained in the record on appeal. Those assignments of error not presented for review and discussed in the brief are deemed to have been abandoned. N.C.R. App. P. 28(a). We have carefully considered his arguments in support of the assignments of error brought forward in the brief and conclude that defendant received a fair trial, free of prejudicial error.

I.

[1] Defendant first contends the trial court erred in denying the defendant's motion to introduce the out-of-court statements of A.L.'s cousin, Joannie Appleman. On the first day of the trial, 27 November 2001, defendant gave the State written and oral notice that he intended to offer the hearsay testimony of Joanie Appleman, now deceased, under Rule 803(24) of the North Carolina Rules of Evidence. The State objected to the evidence, stating that it was unprepared to respond to the testimony. Because defendant was not certain if he was going to offer the evidence, the trial court delayed its ruling.

Later in the trial, during a *voir dire* hearing, Melissa Appleman Wease testified that on the weekend of 23 January 2000, she and her sister, Joannie, were at Smith's trailer when her cousins, A.L. and C.L. came to visit. On the night of 23 January 2000, Joannie told Melissa that earlier, she and A.L. had been jumping on a bed in Smith's house

when the bed broke and A.L. straddled the footboard. Although Melissa remembered that A.L. told her she had been raped by the defendant, Melissa did not remember talking to the investigators or social services workers who had interviewed her.

Defendant's mother, Evelyn Smith, testified during the *voir dire* hearing that on 23 January 2000, that Joannie told her that A.L. "broke the bed down," "went across the footboard" and hurt "her private." Smith called her son-in-law, Frank Appleman, to fix the bed that same day. Smith, who has diabetes, admitted that her blood sugar was not stable, causing her confusion and memory problems. Although Smith spoke with investigators and social workers shortly after the incident, she, too, failed to mention the incident to them.

Frank Appleman, Joannie's father, testified at the hearing that he received a call from Smith one Sunday in January 2000, asking him to come fix a broken bed. When Mr. Appleman asked Joannie what had happened to the bed, she told him the bed fell down when she and A.L. were playing on it, and A.L. hurt herself, but "not bad." During his testimony, Appleman could not remember A.L.'s name.

The State objected to the evidence because (1) proper notice was not served, (2) there was no guarantee of trustworthiness, and (3) without the opportunity to secure witnesses to contradict the testimony, the interest of justice could not be served. The trial court sustained the State's objection, finding the defendant failed to give proper notice and that even if the notice requirement was proper, there were insufficient guarantees of trustworthiness in the testimony of the witnesses. Defendant assigns error to the ruling.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001). Although hearsay is generally not admissible, N.C. Gen. Stat. § 8C-1, Rule 802 (2001), there are exceptions to such inadmissibility, including the "residual" exceptions provided by Rule 803(24), where the availability of the declarant is immaterial, and by Rule 804(b)(5), where the declarant is unavailable. The "residual exceptions" provided by Rules 803(24) and 804(b)(5) are virtually identical, and our Supreme Court has adopted identical six-part guidelines for the admission of testimony offered under either of these exceptions. *State v. Triplett*, 316 N.C. 1, 7, 340 S.E.2d 736, 740 (1986). A hearsay statement may be admitted into evidence under the residual exceptions if (1) proper notice is given to the adverse party of his intent to offer the evidence and of its particulars, (2) the statement is not cov-

ered by any other hearsay exceptions, (3) the statement possesses an "equivalent circumstantial guarantee of trustworthiness," (4) the statement is offered as evidence of a material fact, (5) the evidence is more probative than prejudicial on the point for which it is offered, and (6) the general interest of justice is best served by admitting the evidence. *Id.* at 9, 340 S.E.2d at 741. In order to meet the notice requirement, written notice of the intention to offer the statement, as well as "the particulars of it, including the name and the address of the declarant," must be given to the "adverse party sufficiently in advance of offering the statement." *Id.* at 12, 340 S.E.2d at 743. The notice requirement does not require a fixed amount of time and is usually viewed somewhat "flexibly, in light of the policy of providing a party with a fair opportunity to meet the proffered evidence." *Id.* at 11-12, 340 S.E.2d at 743. On appeal, the ruling of the trial court will be reversed only if the findings are not supported by competent evidence or if the law was applied erroneously. *State v. Holden,* 106 N.C. App. 244, 251, 416 S.E.2d 415, 419-20 (1992), *disc. review denied,* 332 N.C. 669, 424 S.E.2d 413 (1992).

Although some North Carolina cases have found notice given on the first day or two of trial to be sufficient notice for purposes of the first requirement, in such cases notice was effectively given earlier, through oral notice or through discovery. *See Triplett,* 316 N.C. at 13, 340 S.E.2d at 743 (although written notice was given the day trial began, the prosecutor informed the defense three weeks earlier of its intent to introduce the statements); *State v. Agubata,* 92 N.C. App. 651, 375 S.E.2d 702 (1989) (letter written to prosecutor advising her of defendant's intent to introduce evidence under 803(24) was sufficient notice); *State v. Bullock,* 95 N.C. App. 524, 528, 383 S.E.2d 431, 433 (1989) (State disclosed its intent to use statements as well as their substance in a request for discovery two months prior to trial); *State v. Nichols,* 321 N.C. 616, 623, 365 S.E.2d 561, 565 (1988) (defendant had a copy of the statement well in advance of trial and knew the identity of the declarant on the first day of trial, five weeks prior to the introduction of the evidence).

It is undisputed that Joannie's statements are hearsay and that she is unavailable as a witness. Although there is ambiguity in the record as to whether the State received notice one or two days prior to the issue being heard, it is clear during pretrial motions on the day before the beginning of the trial, counsel did not inform the court or the State of his intent to use the statements made by Joannie, even though he had learned of them the previous Friday. Because the State

had no notification of defendant's intent to use the statements of the deceased declarant, the prosecution had no reason to prepare to rebut the statements. Therefore, the State did not have a fair opportunity to respond to the hearsay statements, and the trial court correctly found that the defendant did not give proper notice of its intention to offer hearsay testimony.

The trial court also found that even if defendant had given proper notice, the testimony of the witnesses concerning Joannie's statements lacked sufficient guarantees of trustworthiness. In making this finding, the trial court specifically relied on the testimony of Smith, Melissa Wease, and Frank Appleman and incorporated that testimony "as part of the findings of fact." The testimony of these witnesses included (1) Melissa Wease's admission that she had told no one that Joannie had told her A.L. was injured from jumping on the bed and falling the night of 23 January 2000; (2) Smith's testimony that she did not remember with whom she spoke and that she had not told investigators of the accident during interviews just after the incident; and (3) Appleman's inability to recall A.L.'s name, and his testimony that he had not mentioned the incident to anyone previously. In weighing the trustworthiness of hearsay testimony, the trial court must consider: "(1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross-examination." *Triplet*, 316 N.C. at 10-11, 340 S.E.2d at 742. In addition, the court should consider the "nature and character of the statement and the relationship of the parties." *Id.* at 11, 340 S.E.2d at 742. The trial court's findings are supported by the evidence and support its denial of defendant's proffer of the hearsay testimony of Joannie Appleman. Therefore, we overrule this assignment of error.

## II.

[2] By his next assignment of error, defendant contends that the trial court committed plain error by referring to A.L. as the "victim" forty times in its charge to the jury. Defendant failed to object at trial to the use of the word "victim" in the instructions to the jury and therefore has waived review of this assignment of error unless it is found to be plain error. N.C.R. App. P. 10(b)(2). Where plain error is claimed, the Court must examine the whole record to determine if the "claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, . . . or

where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

North Carolina trial courts have found that the use of the word "victim" in jury instructions does not rise to the level of plain error. *State v. Henderson*, 155 N.C. App. 719, 722, 574 S.E.2d 700, 703 (2003), *disc. review denied*, 357 N.C. 64, 579 S.E.2d 569 (2003); *State v. Hatfield*, 128 N.C. App. 294, 299, 495 S.E.2d 163, 165-66 (1998), *disc. review denied*, 348 N.C. 75, 505 S.E.2d 881 (1998), *cert. denied*, 525 U.S. 887, 142 L. Ed. 2d 165 (1998). In addition, the word "victim" is used in North Carolina pattern jury instructions for first degree rape and first degree sexual offense charges. *State v. Richardson*, 112 N.C. App. 58, 67, 434 S.E.2d 657, 663 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 132 (1994). Moreover, in view of the evidence in this case, we cannot say that had the word "victim" not been used in the trial court's instruction, there is a probability the outcome of the defendant's trial would have been any different. This assignment of error is overruled.

## III.

**[3]** Defendant next argues the trial court committed plain error by not requiring a unanimous verdict regarding the specific sexual act it found as the predicate act for the verdict of guilty of first degree sexual offense. Because the defendant did not make a timely objection, the standard of review is plain error. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

N.C. Gen. Stat. § 14-27.4(a)(1) (2001) states that a person is guilty of a first degree sexual offense "if the person engages in a sexual act with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." The trial court instructed the jurors that they must first find that defendant engaged in a sexual act. They were told that a sexual act could be fellatio or it could be by penetrating, however slight, with any object, the genital opening of a person's body. The State's evidence tended to show that defendant engaged in both of the acts described in the jury instruction as sexual acts. The jury was also required to reach a unanimous verdict as to each charge. The statute does not require all twelve jurors to agree as to which act the defendant committed, only that he committed a sexual act. *See State v. Youngs*, 141 N.C. App. 220, 230, 540 S.E.2d 794, 802 (2000), *disc. review denied*, 353 N.C. 397, 547 S.E.2d 430 (2001); *State v. Hartness*,

326 N.C. 561, 565, 391 S.E.2d 177, 179 (1990). This assignment of error is overruled.

IV.

[4] Finally defendant argues by two assignments of error that the trial court erred in denying defendant's motion for a mistrial, and committed plain error by not inquiring of the jury if it could ignore improperly admitted testimony. Whether to grant a motion for mistrial is in the sole discretion of the trial judge, *State v. Calloway*, 305 N.C. 747, 754, 291 S.E.2d 622, 627 (1982), and absent an abuse of discretion the decision should not be overturned on appeal. *State v. Craig*, 308 N.C. 446, 454, 302 S.E.2d 740, 745, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). The trial court may declare a mistrial when conduct inside or outside the courtroom results in "substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2001).

During her direct examination, A.L. stated: "Melissa said, 'Now I know it's true about what happened to Kathy.' " Defendant's objection to the statement was sustained and the trial court instructed the jury not to consider the remark. There was no testimony as to "Kathy's" identity nor any indication given as to what had happened to her. During her cross-examination, defendant's counsel asked A.L., "Who came in next?" A.L. responded, "And, then I came out of the bathroom and laid on the bed, and then that's when Melissa said that, that's why Kathy was saying all that." Defendant objected and the court instructed the witness: "Tell him what happened next." Again, there was no testimony identifying "Kathy" or what she had said. The record does not disclose that this isolated testimony "substantially and irreparably" prejudiced defendant and thus, a mistrial was not required.

No error.

Judges BRYANT and GEER concur.